UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.    : | Case No. 21-cr-246-2 (ABJ) |
| : | |
| EDWARD BADALIAN, : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT BADALIAN'S
MOTION TO SEVER**

The government now opposes the motion filed by Defendant Edward Badalian ("defendant Badalian") to sever his case from Defendant Daniel Rodriguez ("defendant Rodriguez"). ECF No. 96. Defendant Badalian seeks a severance pursuant to Federal Rule of Criminal Procedure 14, arguing that he would be prejudiced as a result of the expected trial evidence regarding the "scope and level of violence threatened, encouraged and used by Rodriguez." ECF No. 96, at 5-6. There is a strong preference, under the law, for conspiracy defendants charged together in a single indictment to be tried jointly, and defendant Badalian has articulated no legal reason sufficient to overcome that preference. As explained herein, this Court should deny defendant Badalian's Rule 14 severance request, because he has not sufficiently alleged prejudice that would compromise a specific trial right of one of the defendants, or that would prevent the jury from making a reliable judgment about guilt or innocence.

**A.   Background**

The grand jury returned the ten-count conspiracy Indictment in this matter on November 10, 2021. ECF No. 65. Defendant Badalian is charged in Count 1 with Conspiracy, in violation 18 U.S.C. § 371; Count 2 with Obstruction of an Official Proceeding and Aiding and Abetting, in

1

violation of 18 U.S.C. §§ 1512(c)(2), 2; Count Three with Tampering with Documents or Proceedings, in violation of 18 U.S.C. § 1512(c)(1); and in Count Ten with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). The indictment alleges that defendant Badalian, Rodriguez and a third co-defendant conspired together to both to stop, delay, and hinder Congress's Certification of the Electoral College vote, and to corruptly alter, destroy, mutilate, and conceal a record, document, or other object to prevent evidence of their unlawful acts on January 6, 2021, from being used in an official proceeding—the grand jury investigation into the attack of the Capitol on January 6, 2021.

In the fall of 2020, defendants Badalian and Rodriguez, with several others, created Telegram group chat, the "PATRIOTS 45 MAGA Gang," to support former President Donald J. Trump and to discuss what defendants Badalian and Rodriguez asserted was a stolen or fraudulent election result. After a December 19, 2020, tweet by former President Trump, which stated "Statistically impossible to have lost the 2020 Election. Big protest in D.C. on January 6th. Be there, will be wild!" defendant Badalian and defendant Rodriguez started posting in the Patriots 45 Maga Gang group chat about traveling to Washington, D.C. Both defendant Badalian and defendant Rodriguez posted violent and incendiary messages in the Telegram group chat, such as:

- On or about December 21, 2020, defendant Badalian posted, "we need to violently remove traitors and if they are in key positions rapidly replace them with able bodied Patriots."

- On or about December 22, 2020, defendant Badalian, "he [i.e., President Trump] has to let it sit on his desk until Jan 3 / veto / by the time mitch [i.e., Senate Majority Leader Mitch McConnell] can do the override we will be there / then he can invoke and Patriots will be a[t] the ready."

- On or about December 23, 2020, defendant Rodrgiuez posted, "we gotta go handle this shit in DC so the crooked politicians don't have an army of thugs threatening violence to back their malevolent cabal ways[.]"

- On or about December 29, 2020, defendant Rodriguez posted, "Congress can

hang. I'll do it. Please let us get these people dear God."

As January 6, 2021, approached, both defendant Badalian and defendant Rodriguez used the Telegram group chat to organize those who would be traveling with them to Washington, D.C. Defendant Rodriguez posted about the AirBNB where the group would stay and the van they would rent to get there, while defendant Badalian posted about the gear he had collected for the group, such as respirators, masks, snow googles, knee pads and baseball helmets. On January 3, 2021, defendant Badalian and another individual rented a vehicle from Enterprise at the Los Angeles International Airport, and defendant Badalian, defendant Rodriguez and three others left Los Angeles to drive across the country to Washington, D.C.

In the morning hours of January 6, 2021, defendant Badalian and defendant Rodriguez met with others in downtown Washington, D.C. to walk to the Ellipse for the rally that would culminate in the speech by former President Trump. Subsequent to the speech, defendant Badalian and defendant Rodriguez walked down to the U.S. Capitol building, ultimately landing on the Lower West Terrace and inaugural stage, where rioters were fighting members of law enforcement to attempt to gain access to the building. Between approximately 2:42 p.m. and 3:18 p.m., defendant Rodriguez participated in the "heave ho" effort in the Lower West Terrace tunnel, threw a flagpole at the police line, deployed a fire extinguisher at officers, and tased Officer M.F. twice in the back of the neck. The third codefendant also advanced into the tunnel on the Lower West Terrace and aggressively resisted officers' attempts to remove him from the sallyport between the first and second doors of the Capitol building.

At approximately 3:45 p.m., rioters broke the window to the left of the tunnel on the Lower West Terrace. Defendant Badalian, defendant Rodriguez and the third codefendant entered the Capitol building through that window, uniting in room ST2M. Once inside, defendant Rodriguez attempted to break another window with a large flagpole. The third codefendant kicked the door

3

to office ST6M several times in order to force entry. Defendant Rodriguez and the third codefendant then rifled through paperwork and objects in ST6M, ultimately carrying away several emergency escape hoods from the building.

Defendant Badalian, defendant Rodrgiuez and the third codefendant, along with others, returned to the Los Angeles area in the rented vehicle after the attack on the Capitol. Along the way, defendant Badalian appeared on the call-in show "War Room" on INFOWARS. Defendant Badalian discussed his participation at the events at the Capitol using a pseudonym, while photographs and videos of defendant Badalian and others at the Lower West Terrace of the Capitol played for viewers. Directly following defendant Badalian's interview, Person One called in to the show to discuss the footage, some of which Person One had provided to INFOWARS. During the interview, Person One referred to defendant Badalian as "Ed," as opposed to the pseudonym that defendant Badalian had used to obscure his true identity in the interview. Some time after the interview, defendant Rodriguez called Person One to ask if he, defendant Badalian, and the third codefendant could visit Person One when they returned to California. Person One agreed and gave their home address.

Upon their return to California, the three codefendants arrived at Person One's home. The third codefendant walked around Person One's residence, unplugged all of the Amazon Alexa devices, and indicated that they should not speak. The third codefendant then wrote in a notebook "I WANT TO HELP YOU DELETE EVERYTHING AND TO TRANSFER THE FILES TO A SECURE HARD DRIVE." Person One believed that the third codefendant was discussing photos and videos taken by Person One at the Capitol on January 6, 2021, including materials that showed defendant Rodriguez, defendant Badalian, and the third codefendant. Defendant Badalian told Person One not to use his name when discussing the events at the Capitol on January 6, 2021.

B.   **<u>Legal Authority</u>**

In cases with multiple defendants and multiple offenses, Federal Rule of Criminal Procedure 8(b) provides the "standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) (cleaned up). It states:

> JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Joint trials further various interests, including "conserving state funds, diminishing inconvenience to witnesses and public authorities, and avoiding delays in bringing those accused of crime to trial.'" *United States v. Brown*, 16 F.3d 423, 428 (D.C. Cir. 1994) (cleaned up). Consequently, "[t]here is a preference in the federal system for joint trials," *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019), and the D.C. Circuit construes Rule 8(b) broadly in favor of joinder, see *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) (it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)").

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any other pretrial evidence offered by the Government.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or

provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)). But Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *accord*, *United States v. Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (cleaned up).

Once multiple defendants are properly joined in the same indictment under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (en banc)). The preference for joint trials of co-conspirators is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted).  *See also United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999) ("Joint trials are favored in RICO cases ... 'where ... the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two defendants who are charged, inter alia, with participating in the same illegal acts.'" (quoting *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989))).

To obtain a severance, the defendant has the burden of establishing the requisite prejudice. *See, e.g., United States v. Carson*, 455 F.3d 336, 374 (D.C. Cir. 2006).  Such prejudice may be shown, for example, by the presence of evidence admissible against one defendant but not another

6

or by the unavailability of exculpatory evidence to a single defendant in a joint trial that would be available in a single trial. *Zafiro*, 506 U.S. at 539. District courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019) (cleaned up). *See generally United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) ("The varying roles played by members of a conspiracy will not render joint trial inappropriate as long as the jury can reasonably compartmentalize the substantial and independent evidence against each defendant.") (cleaned up).

**C.     Discussion**

    **1.     Defendant Badalian and Defendant Rodriguez are Properly Joined Under Rule 8(b).**

Defendant Badalian does not appear to challenge the propriety of the Rule 8(b) joinder of his case to his codefendant. See ECF No. 96, at 5. Nor would such a challenge win the day, given that the facts in the conspiracy indictment allege that all three defendants "have participated in the same act or transaction, or in the same series of acts or transactions." *Schaffer v. United States*, 362 U.S. 511, 514, (1960); see also *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996), *as amended* (Feb. 20, 1997)(Rule 8(b) joinder was proper because the indictment alleges that all of the defendants participated in a single conspiracy). Here, all of the charges alleged against defendant Badalian are also alleged against defendant Rodriguez. ECF No. 65. The charges not alleged against defendant Badalian that are alleged against defendant Rodriguez—Obstruction of Law Enforcement During a Civil Disorder, Inflicting Bodily Injury on Certain Officers, Theft of Government Property and Destruction of Government Property—are alleged as overt acts in furtherance of the conspiracy with which defendant Badalian is charged. See ECF No. 65, at 5-6. Therefore, Rule 8(b) joinder is appropriate here. See *United States v. Carson*, 455 F.3d 336, 373

(D.C. Cir. 2006)("The indictment alleged that all of these counts were overt acts in furtherance of the narcotics conspiracy and predicate acts in furtherance of the RICO conspiracy. This provided the necessary link to satisfy Rule 8(b)."); accord *Cupo v. United States*, 359 F.2d 990, 992 (D.C. Cir. 1966) (joinder of defendants in conspiracy indictment is proper, but joinder of substantive counts not alleged to be parts of "the same act or transaction or the same series of acts or transactions constituting an offense or offenses," and were not introduced in evidence as parts of the conspiracy, is improper).

### 2. Defendant Badalian Cannot Meet His Burden Under Rule 14 To Demonstrate Prejudice Sufficient to Overcome The Preference for Joinder

Defendant Badalian relies primarily on Rule 14 as the basis for his severance motion, but he has fallen far short of meeting his burden to obtain a Rule 14 severance.

#### a. Defendant Badalian has not shown that his defense is mutually antagonistic or irreconcilable with his codefendant.

First, defendant Badalian argues that "Courts of Appeals frequently have expressed the view that 'mutually antagonistic' or 'irreconcilable' defenses may be so prejudicial in some circumstances as to mandate severance," citing to several circuits other than the D.C. Circuit. ECF No. 96, at 4. Yet, those cases to which defendant Badalian cites also hold that for such an argument to prevail, "the defendant must show that the antagonism between the co-defendants will mislead or confuse the jury" and that the "defendant carries the heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial." *United States v. Benton*, 852 F.2d 1456, 1469 (6th Cir. 1988); see e.g., *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986)("a defendant must make a factual demonstration, not an abstract allegation, that 'the acceptance of one party's defense would tend to preclude the acquittal of other,'" or that "(c)onversely, such a showing would seemingly require that the guilt of one defendant tends to establish the innocence of the other."); *United States v. Keck*, 773 F.2d 759, 765 (7th Cir.

8

1985)("Defenses are mutually antagonistic, however, only where the acceptance of one party's defense precludes the acquittal of the other defendant."); *United States v. Magdaniel-Mora*, 746 F.2d 715, 719 (11th Cir. 1984)(defendant must satisfy the court that "the essence of [their] defense is contradicted by a co-defendant's defense.").

Defendant Badalian has made no factually specific showing here that his defense is irreconcilable with defendant Rodriguez's, other than to note that defendant Badalian's codefendant engaged in some criminal conduct that he did not join in directly. ECF No. 96. This is a manifestly insufficient basis for Rule 14 severance. *United States v. Straker,* 800 F.3d 570, 626 (D.C. Cir. 2015) ("Severance is not required, however, when there is substantial and independent evidence of each [defendant's] significant involvement in the conspiracy."). Indeed, the Supreme Court held, in *Zafiro v. United States,* 506 U.S. 534, 538, (1993), that mutually antagonistic defenses are not prejudicial *per se*, and a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such is not the case here.

      **b. Defendant Badalian has not shown he and his codefendant have markedly different degrees of culpability, heightening the risk of prejudice to the point of preventing the jury from making a reliable judgment about guilt or innocence.**

Primarily, defendant Badalian contends severance is warranted because the risk of prejudice to defendant Badalian,[1] since being tried in a case with "extensive, extreme and shocking" evidence of defendant Rodriguez's assaults on law enforcement and threats against federal officials is highly likely to lead a jury to conclude defendant Badalian is guilty. ECF No. 96, at 6. This argument fails for many reasons.

First, as shown above, defendant Badalian's criminal conduct—particularly his own explosive rhetoric, extensive planning in advance of traveling to the Capitol for the January 6, 2021 riot, and obstructive activities after the fact—was far more extensive than mere presence on the Capitol grounds. *See United States v. El-Saadi*, 549 F. Supp. 3d 148, 169 (D.D.C. 2021) (denying severance even though "the number of allegations against Khawaja, as the alleged hub of the second conspiracy, is far greater than against anyone else," where "El-Saadi's alleged participation in the second conspiracy is similar to the alleged roles of several other defendants"); *United States v. Eiland*, 406 F. Supp. 2d 46, 53 (D.D.C. 2005) (denying severance; "Disparity as to the violence alleged is generally only dispositive when it is combined with another factor, such as drastic differences in those charges.") This is not a case where the evidence against defendant Badalian will be significantly less damning than that against his codefendants. As Judge Lamberth explained, to "warrant severance as a remedy, there must be *a great disparity in evidence*, and the

---

[1] Defendant Badalian also invokes *Kotteakos v. United States*, 328 U.S. 750 (1946) as a basis for severance, (ECF No. 96, at 5) but it has no application here. Indeed, it does not address joinder at all. Rather, in *Kotteakos*, the Supreme Court held the evidence was insufficient to prove a single conspiracy where the central figure was the center of a "spoke and wheel" criminal enterprise, and the others (the "spokes") had contact only with the "hub," but had no knowledge of each other. The Court concluded that the evidence proved several conspiracies, each between a spoke and the hub, and not the single conspiracy charged in the indictment. *Id*. at 756. Here, the allegations in the indictment show an extensive prior relationship between defendant Badalian and defendant Rodriguez, they coordinated activities to bring about the object of their conspiracy, and do not exist in the "hub and spoke" nature argued in *Kotteakos*. Therefore, there is no concern that a risk of prejudice is "heightened" when the codefendants have markedly different degrees of culpability.

disparity must create a viable possibility that the jury, even with the aid of curative instructions and appropriate voir dire, will be unable to compartmentalize the evidence between defendants or will be impeded in their duty to render a fair assessment of guilt or innocence." *United States v. Gray*, 173 F. Supp. 2d 1, 15 (D.D.C. 2001), *aff'd sub nom. United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011).[2] Much of the evidence, and the most compelling evidence, the government will present includes the Telegram group chat demonstrating the intent and state of mind of both defendant Badalian and defendant Rodriguez, the prior planning engaged in by both defendants to bring weapons and people to Washington, D.C. for January 6, 2021, videos of each defendant's conduct on the Lower West Terrace and inside rooms ST2M, ST4M and ST6M at the U.S. Capitol building, and the testimony of Person One describing the codefendants obstructive activities upon their return to California. This evidence applies to both defendants, so no great disparity of evidence exists in this case to warrant severance.

Additionally, there is no concern that a joint trial will result in spillover prejudice, even though defendant Badalian argues that defendant Rodriguez is charged with more "extreme, extensive and shocking" conduct than he is. ECF No. 96, at 6. That the evidence will prove defendant Rodriguez engaged in some additional criminal conduct in which defendant Badalian did not join directly does not form the basis for a Rule 14 severance. *See Straker*, 800 F.3d at 626 (affirming denial of severance even though defendant participated in a kidnapping but was not involved in the victim's death); *Celis*, 608 F.3d at 844-45 (affirming denial of Giraldo's severance

---

[2] Such a great disparity occurred in *United States v. Sampol*, 636 F.2d 621, 645-47 (D.C. Cir. 1980) a prosecution for conspiracy to assassinate the former Chilean Ambassador to the United States. The charges against Sampol were limited to making false statements to a grand jury and misprision of a felony. The D.C. Circuit held that those charges should have been severed from those against a defendant directly involved in the murder because they were "grossly disparate" with the murder charges but at trial, "[t]here was never [a] clear distinction between the different defendants and the evidence against each of them." *Id*. at 645-47. No such great disparity exists here. *See Straker*, 800 F.3d at 627 (distinguishing *Sampol*).

11

motion in prosecution for drug-trafficking, even though he, unlike co-defendant Valderama, was not a member of FARC, a violent revolutionary group that committed atrocities; even if FARC evidence would have been excluded from a trial against Giraldo alone, "it does not follow that the jury was incapable of fairly assessing Giraldo's guilt"); *United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (affirming denial of Rios' severance motion, even though "the bulk of the trial evidence concerned Mejia rather than" Rios, where the government "introduced 'independent and substantial evidence' against Rios"). Of note, significant portions of the government's evidence will come from videos, electronic group chats, and eyewitness testimony, rather than arcane expert testimony or a mass of documents regarding complex topics such securities regulation, tax violations, or unlawful technology transfers that are occasionally the subjects of a federal criminal trial. "The danger of spillover prejudice is minimal when the Government presents tape recordings of individual defendants." *Celis*, 608 F.3d at 846.

Nor is this a case where the jury will be unable to compartmentalize the evidence against Badalian from that against his codefendant. The evidence that applies solely to defendant Rodriguez's criminal acts on the Lower West Terrace and inside the U.S. Capitol building are easily distinguishable from defendant Badalian's. The crimes alleged solely against defendant Rodriguez (and the third codefendant, for that matter) were all caught on video, and none of the codefendants were dressed substantially alike on January 6, 2021, so there is little chance the jury will be confused about which defendant engaged in which conduct. *See Straker*, 800 F.3d at 626 ("substantial and independent evidence against Sealey and Straker enabled the jury to reasonably compartmentalize the evidence of guilt against each of them from the rest of the evidence at trial").

### c. Defendant Badalian cannot overcome the preference for joint trials when significant portions of the evidence against each codefendant overlaps.

The evidence the government will present at trial against both defendant Badalian and defendant Rodriguez overlap extensively. The preference for joint trials of co-conspirators is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted). Salient factors that militate against severance, all of which are present here, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989). Much of the general testimony about the Capitol building and grounds, the riot on January 6, 2021, and the Congressional proceeding these defendants are alleged to have conspired to obstruct is necessary evidence the government must present against both defendants. In addition, evidence from videos, the Telegram group chat, travel plans, and eyewitness testimony must be presented against both defendant Badalian and defendant Rodriguez to establish the conspiracy alleged. With respect to those issues and many others, the government will present a host of witnesses who would have to testify repeatedly in the event of severed trials. The efficiency gained by avoiding, through a joint trial, the duplication of testimony is a significant benefit of joint trials. See *United States v. Slatten,* 865 F.3d 767, 788 (D.C. Cir. 2017)("in order to convict Ridgeway, the government would be required to present the same evidence and to rely upon testimony from the same witnesses as they would for the other defendants.").

Finally, a limiting instruction from the Court commanding the jury to give individual consideration to each defendant should cure any concerns regarding prejudice or confusion of the

evidence presented against defendant Badalian as opposed to his codefendants. See *Zafiro*, 506 U.S. at 539 ("less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) (same); *El-Saadi*, 549 F. Supp. 3d. at 167 ("The Court agrees with the government that limiting instructions, if necessary, can address any risk of prejudice related to the first conspiracy's foreign ties.").

**D.     Conclusion**

This Court should deny defendant Badalian's motion to sever his trial from defendant Rodriguez.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:   /s/
KIMBERLY L. PASCHALL
Assistant United States Attorney
Capitol Siege Section
D.C. Bar No. 1015665
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.paschall@usdoj.gov