TIGRAN MARTINIAN, ESQ.
CSB#: 247638
Martinian & Associates, Inc.
2801 Cahuenga Boulevard West
Los Angeles, California 90068
Telephone: (323) 850-1900
Email: tm@martinianlaw.com

Attorney for Defendant,
EDWARD BADALIAN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

     **Plaintiff**

                              **Case Number: 21-cr-246**

**DANIEL JOSEPH "DJ" RODRIGUEZ,**    **[Oral Argument Requested]**
**(Counts 1, 2, 3, 4, 6, 7, 8, 10)**

**EDWARD BADALIAN**
**(Counts 1, 2, 3, 10)**

     **Defendants.**
_____/

**DEFENDANT, EDWARD BADALIAN'S, MOTION TO DISMISS COUNTS II, III, AND X OF THE INDICTMENT**

**TABLE OF CONTENTS**

|                              | Page  |
|------------------------------|-------|
| TABLE OF CONTENTS            | 1     |
| TABLE OF AUTHORITIES         | 2-4   |
| I. INTRODUCTION              | 4     |
| II. DISCUSSION               | 7-24  |
| III. CONCLUSION              | 24    |
| CERTIFICATE OF SERVICE       | 25    |

## TABLE OF AUTHORITIES

Page

*Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d 846 (S.D. Ind. 2005)   22

*Bush v. Gore*, 531 U.S. 98, 154 (2000)   10

*Cole v. Arkansas,* 333 U.S. 196 (1948)   23-24

*Hamling v. United States*, 418 U.S. 87 (1974)   6

*I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183 (1991)   12

*McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031 (11th Cir. 2000)   11

*Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968)   17

*Russell v. United States*, 369 U.S. 749 (1962)   4, 5, 7, 24

*Smith v. O'Grady*, 312 U.S. 329 (1941)   23

*Stirone v. United States*, 361 U.S. 212 (1960)   5, 6, 24

*Yates v. United States*, 574 U.S. 528 (2015)   13

*United States v. Akinyoyenu*, 199 F. Supp. 3d 106 (D.D.C. 2016)   5

*United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017)   5

*United States v. Arthur Anderson, LLP,* 544 U.S. 696 (2005)   9, 12

*United States v. Bowdoin*, 770 F. Supp. 2d 142 (D.D.C. 2011)   5

*United States v. Burge*, 711 F.3d 803 (7th Cir. 2013)   12

*United States v. Bursey*, 416 F. 3d 301 (4th Cir. 2005)   22

*United States v. Childress*, 58 F.3d 693 (D.C. Cir. 1995)   6

*United States v. Cruikshank*, 92 U.S. 542 (1875)   7

*United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999)   24

*United States v. Dunn*, 434 F. Supp. 2d 1203 (MD. Ga. 2006)   11

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013)                    8, 10, 11

*United States v. Georgia*, 2014 WL 2084891 (N.D. Georgia 2014)              11

*United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017)          7

*United States v. Hitt*, 249 F.3d 1010 (D.C. Cir. 2001)                      6

*United States v. Johnson*, 576 U.S. 591 (2015)                              15, 16

*United State v. Junot*, 902 F. 2d 1580 (9th Cir. 1990)                      22

*United States v. Keith*, 605 F.2d 462 (9th Cir. 1979)                       24

*United States v. Martinez,* 764 F.Supp.2d 166 (D.D.C.2011)                  6

*United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996)                    17, 18

*United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976)                      7

*United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004)                     6

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991)                 16, 17, 18

*United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008)                       11

*United States v. Ring*, 628 F. Supp. 2d 195 (D.D.C. 2009)                   5

*United States v. Sampson*, 371 U.S. 75 (1962)                               5, 12

*United States v. Sharpe*, 438 F.3d 1257 (11th Cir. 2006)                    6

*United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019)                  11

*United States v. Syring*, 522 F. Supp. 2d 125 (D.D.C. 2007)                 5

*United States v. Young*, 916 F.3d 368 (4th Cir. 2019)                       12

## OTHER AUTHORITIES

18 U.S.C. § 231                                                              14

18 USC §371                                                                  4

18 U.S.C. §§§ 1501, 1505, 1507, 1512,                                        4, 8-18, 22-23
1515, 1519

18 U.S.C. § 1752(a)(1), (b)(1)(A)                                              4, 20, 21

FED. R. CRIM. P. 7(c)(1)                                                       4, 24

FED. R. CRIM. P. 12(b)(3)(B)                                                   5

Fifth and Sixth Amendments to the United States Constitution                  23

S. REP. NO. 107-146 (2002)                                                    13

Stephen A. Siegel, *The Conscientious Congressman's Guide*                    10
*to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004)

Joseph Story, *Commentaries on the Constitution*, § 1799 (1833)               24

## I. <u>INTRODUCTION</u>

Edward Badalian is charged in the indictment with inter alia, 1) conspiracy to commit an offense against the United States 18 USC §371 (Count One), 2) obstruction of the official proceeding and aiding and abetting 18 USC §§1512 (c) (2), 2, (Count Two), 3) tampering with documents and proceeding 18 USC § U.S.C. § 1512 (c)(1) (Count Three), 4) unlawfully and knowingly entering restricted building or grounds 18 U.S.C. § 1752(a)(1), (b)(1)(A) (Count Ten).

Mr. Badalian moves this Honorable Court to dismiss Count 2, 3, 10.

**STANDARD OF REVIEW**

**A. Motion to Dismiss**

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)). A defendant "may raise by pretrial motion any defense, objection, or request that the Court can

determine without a trial on the merits." "A defendant may move to dismiss an indictment on the grounds that it fails to state an offense or contains multiplication of counts". FED. R. CRIM. P. 12(b)(3)(B); *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016) (Citations omitted). Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." FED. R. CRIM. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); United *States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted). An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. Id.

Moreover, in analyzing this, "a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis original).

A valid charging document must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004). The Government must state the essential elements of the crime and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused

may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone*, 361 U.S. at 218; *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted). That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true.  *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. See *Russell*, 369 U.S. at 763-771; *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017).

The Supreme Court spoke to this requirement many years ago:

"[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone."

*United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

The Supreme Court also noted:

"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, `includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — it must descend to particulars.'" *Id.* Special notice should be paid to the descriptor

"generic" as being inadequate. Allegations that are generic and not specific to a particular Defendant are not sufficient.

The D.C. Circuit has ruled on the necessity of factual allegations. *United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment failed to make necessary factual allegations).

## II. DISCUSSION

### MOTION TO DISMISS COUNTS TWO AND COUNT THREE

Count Two of the Indictment charges Mr. Badalian with a violation of

18 USC §§1512 (c)(1)(2) as follows:

"On or about January 6, 2021 within the District of Columbia, the defendants attempted to and did corruptly obstruct, influence and impede an official proceeding that is the certification of the Electoral College vote and did aid and abet each other and others known and unknown to do the same …"

Count Three of the Indictment charges Mr. Badalian with a violation of 18 U.S.C. § 1512 (c)(1) as follows: tampering with documents and proceeding.

"Between on or about January 6, 2021, and on or about January 19, 2021, the defendants, within the District of Columbia and elsewhere did corruptly alter, destroy, mutilate and conceal record, document and other object and attempted to do so with the intent to impair its integrity and availability for use in an official proceeding, that is, the grand jury investigation into the attack on the Capitol on January 6, 2021".

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." *See generally*, 18 U.S.C. §§ 1501-1521. As the Ninth Circuit has carefully considered and recognized, based on the plain language of the statute, an offense under §1512(c) does not

prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal. *See United States v. Ermoian*, 752 F.3d 1165, 1179 (9th Cir. 2013). Stated differently, Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress. Any alleged obstruction of the certification of the Electoral College vote is simply outside the scope of §1512(c). Alternatively, on its face §1512 is constitutionally infirm because of its inherent vagueness and arbitrary enforcement in the panoply of January 6th cases.

### A.    Section 1512 Must be Strictly Construed

18 U.S.C. § 1512 prohibits "corruptly. . . obstruct[ing], influenc[ing], or imped[ing] any *official proceeding*, or attempt[ing] to do so." *Id.* (emphasis added). Section 1515(a)(1) of Chapter 73 of Title 18 defines an official proceeding as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

Count Two of the Indictment against Mr. Badalian concerns "a proceeding before the Congress" as set forth in §1515(a)(1)(B).  With respect to 18 U.S.C. § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both

out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States v. Arthur Anderson, LLP,* 544 U.S. 696, 703 (2005) (internal citations and quotations omitted) (strictly construing §1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

## B.     An "Official Proceeding" under §1512(c) Concerns the Administration of Justice

A review of the text, history, and judicial interpretations of §1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that §1512(c), which punishes obstruction of "official proceedings," does *not* apply to the Electoral College certification[1]

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in §1512(c) and defined in §1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512"). The *Ermoian* court, tasked with deciding whether a criminal investigation by the FBI was considered an "official proceeding" for purposes

---

[1] Congress counts the electoral votes pursuant to the Twelfth Amendment to the United States Constitution and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15. Congress counts the electoral votes after the states have already heard any disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting). Members of Congress may make an objection, in writing, and without argument. 3 U.S.C. § 15. According to the statute, there is no testimony, no witnesses, no argument, and no evidence introduced at the electoral count. The event is merely ceremonial. *See* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004).

of §1512(c), noted that "the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding.'" *Id*. at 1169.

Reviewing the plain language of §1515, the *Ermoian* court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal – rather than lay – understanding of the term 'proceeding' is implicated in the statute." *Id*. at 1170. The court noted that "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id*. (citing "*Proceeding*," Oxford English Dictionary, *available at* http://www.oed.com). Moreover, the court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.*

The Ninth Circuit further observed that examining the term "proceeding" within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing. [Section 1515(a)(1)(C)] refers to proceedings "before a Federal Government agency" – a choice of phrase that would be odd if it were referring to criminal investigations. The use of the preposition "before" suggests an appearance in front of the agency *sitting as a tribunal. Id.* at 1170-71 (internal citation omitted) (emphasis added); *see also United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008) ("use [of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding involves some formal convocation of the agency in which parties are directed to appear."). The court also considered that §1512 uses the terms "attendance, "testimony," "production" and "summon[]" when describing an official proceeding, and found the use of these terms "strongly implie[d] that some formal hearing before a tribunal is contemplated." *Id.* at 1172.

The logic and reasoning used by the *Ermoian* court in considering whether an FBI investigation fell under the scope of §1512(c) applies with equal force to interpreting the term "proceedings before the Congress." Taking §1512 and the definitions contained in §1515 as a whole, it is plain that the statute is directed at conduct that interferes with the administration of justice[2].

Even the title of the statute, "Tampering with a witness, victim, or an informant," suggests an adversarial proceeding related to the administration of justice[3] There is little doubt that §1512 only criminalizes obstructive conduct related to a hearing before a tribunal affecting the administrative of justice and the ceremonial certification of the Electoral College votes does not qualify as an "official proceeding" under the statute[4]

---

[2] *See McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000) ("Section 1512 . . . applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress*, federal agencies, and insurance regulators.")(emphasis added); *United States v. Dunn,* 434 F. Supp. 2d 1203, 1207 (MD. Ga. 2006) (" . . . § 1515(a)(1) . . . describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings.")(emphasis added); *United States v. Georgia,* 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of §1512(c) did not include a FBI investigation); *United States v. Sutherland,* 921 F.3d 421 (4th Cir. 2019) (the term "proceeding" implies 'some formal convocation . . . in which parties are directed to appear") (quoting *United States v. Young,* 916 F.3d 368, 384 (4th Cir. 2019)).

[3] *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

[4] This interpretation is consistent with the case law that has clarified the meaning of the statutory language at issue here. *See e.g. Arthur Anderson, LLP,* 544 U.S. at 708 (interpreting §1512(c)as requiring that the defendant have "knowledge that his actions are likely to affect [a]judicial proceeding" in order to have the "requisite intent to obstruct'); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)(considering the application of §1512 and noting that "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries.")*cert. denied*, 571 U.S. 888 (2014); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018)(noting that §1512 "broadly criminalizes various forms of witness tampering").

### C.     The Legislative History Demonstrates that §1512(c) Concerns the Administration of Justice

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance." Pub. L. No. 107-204,116 Stat. 745. Nothing in the legislative history of the Sarbanes-Oxley Act supports the notion that Congress enacted §1512(c)(2) to criminalize the disruption of a ceremony before Congress by persons engaged in apolitical rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become. Rather, the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36 (2015). The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal  prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," S. REP. NO. 107-146, at 2 (2002) (emphasis added).

In Yates, the Supreme Court narrowly construed the term "tangible object" as set forth in 18 U.S.C. § 1519, which penalized a person who knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519.  Keeping in mind that Congress designed the Sarbanes-Oxley Act with a "trained [] attention on corporate and accounting deception and cover-ups," the Court held that the Act did not contemplate penalizing the act of tossing undersized fish overboard to avoid the

consequences of an inspection by federal authorities. *Id.* at 532. Rather, in the context of the statute's purpose, a "tangible object" must be one used to record or preserve information. *Id.* Thus, while fish are tangible objects in the lay sense of that phrase, they do not qualify as tangible objects under §1519 given the broader context of the Sarbanes-Oxley Act. In rendering the *Yates* decision, the Supreme Court clearly telegraphed that legal terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act.

In short, when considering the Act's preamble and legislative history, it is clear that §1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. The legislative background of §1512(c) makes plain that it was not intended to apply in all circumstances where *any* government function may have been impeded, and given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

D.      **Other Tools of Statutory Interpretation Support Mr. Badalian'**
**Motion to Dismiss**

Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further supports Mr. Badalian's interpretation of the statute at issue.

Several of the subsections of Chapter 73 explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute within Chapter 73 that prohibits "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstructing, or impeding *the administration of justice.*" 18 U.S.C. § 1507

(emphasis added). All of these laws are related to the obstruction of the administration of justice. Section 1512(c) falls right within their midst.

### E.   Congress Has Used Other Terms to Describe Interference with Electoral College Certification

Mr. Badalian submits that the government incorrectly conflated an "official proceeding" under §1512 with a "federally protected function" under 18 U.S.C. § 231(a)(3) or the "official business" of Congress under 40 U.S.C. § 5104(e)(2)(c). Mr. Badalian submits that the ceremonial certification of the Electoral College by Congress may be more appropriately considered the "official business" of Congress or a "federally protected function" rather than an "official proceeding before the Congress" as captured by 18 U.S.C. §§ 1512(c) and 1515. Charging Mr. Badalian with obstruction under 18 U.S.C. § 1512(c)(2) is, quite simply, overkill.

The term "federally protected function" is defined as:  [A]ny function, operation or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails 18 U.S.C. § 232(3).

### F.   Alternatively, Section 1512(c)(2) is Unconstitutionally Vague

Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague and does not provide fair notice to Mr. Badalian as to the conduct it punishes. Section 1512(c)(2) provides that:

Whoever *corruptly* –

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) *Otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2).

First, §1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. To wit, courts must speculate as to the meaning of the word "corruptly" and the phrase "official proceeding." Perhaps more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, requiring courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

In *Johnson*, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." *Johnson,* 576 U.S. at 591.  In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. *Johnson,* 576 U.S. at 597.

Observing that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id*. at 598.

Similarly, here, the residual clause of §1512(c) is constitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. As discussed at length above, courts have generally interpreted

"official proceeding" to mean something more formal than an investigation, but there has been no established standard, leaving the courts to deal with this ambiguity.

Further, the vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding." The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations. The court held that "in the absence of some narrowing gloss, people must guess at its meaning and application." *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991). Previously, in *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the court had held that a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of another's behavior.'" *Poindexter*, 951 F.2d at 399 (quoting *Ricks*, 414 F.2d at 1097). The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. *Id.* After an assessment of the legislative history and judicial interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires, and found the term vague as applied to the defendant making false statements. *Id.* at 406.

Following *Poindexter*, Congress amended §1515 to define "corruptly" for purposes of §1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." §1515(b). However, this amendment did not resolve the vagueness that still exists in §1512 as Congress did not amend §1515 as it applies to §1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case the defendant influenced a witness, which fits squarely within the non-vague category that Poindexter established. *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." *Id.* The *Poindexter* Court explained that influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'" *Poindexter*, 951 F.2d at 379. However, *Morrison* was not faced with the question of what "corruptly" means in the context of §1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the statute. Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

Further, analyzing the government's approach to charging defendants with a violation of §1512(c)(2) arising out of events on January 6, 2021, illustrates how vague and arbitrary the enforcement of this statute can be.

Initially, it seemed that the government was only charging those individuals who had entered the Senate chamber[5] with a §1512(c)(2) violation. However, a snapshot of some of defendants that have been charged with a violation of §1512(c)(2) brings the inconsistencies into stark relief.

(1) *United States v. Isaac Sturgeon*, 21-cr-91, Mr. Sturgeon is alleged to have assisted in pushing a barricade outside the Capitol building but never entered the Senate chamber, never went inside the Capitol building, and never made any threats to law enforcement or on social media

---

[5] The ceremonial Electoral College certification took place in the Senate Chamber

suggesting he wished to disrupt the vote. Mr. Sturgeon is not alleged to be part of the Oath Keepers or the Proud Boys.

(2) *United States v. Kenneth Grayson*, 21-cr-224, Mr. Grayson is alleged to have entered the Capitol building, but not alleged to have entered the Senate chamber. Prior to January 6, 2021, he allegedly wrote in a private message, "I am therefor the greatest celebration of all time after Pence leads the Senate flip! OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!"

(3) *United States v. Benjamin Larocca*, 21-cr-317, Mr. Larocca allegedly entered the Capitol building while screaming "Our House!" He was with an individual who was allegedly yelling, "You fucking oath breakers!" Mr. Larocca is not alleged to have entered the Senate floor and is not a member of the Proud Boys or Oath Keepers.

(4) *United States v. Sean Michael McHugh*, 21-cr-436, Mr. McHugh allegedly employed bear spray in direction of officers and yelled insults at officers. He also allegedly used a megaphone and engaged the crowd with chant, such as "our house!" There is no evidence he entered the Capitol building or the Senate floor.

(5) *United States v. Dale Jeremiah Shalvey*, 21-cr-334, Mr. Shalvey allegedly entered the Senate chamber and is captured on video rummaging through Senator Cruz's notes. However, he is not alleged to be a part of the Oath Keepers or the Proud Boys.

As illustrated by these cases, the facts and circumstances of each vary drastically from each other and make it clear that the government's charging decisions are inconsistent. Some cases allege entry into the Capitol building while others do not. More importantly, the government does not specify what "influence" these defendants had or how exactly they "impeded." With respect to Mr. Badalian, he was originally charged via criminal complaint and indicted in March of 2021.

Mr. Badalian is alleged to have entered the Capitol building, but not the Senate chamber, and he was inside the building for approximately four minutes. The inconsistent charging decisions along with the inherently vague words of the statute, as well as the "residual clause" that is the basis for charging Mr. Badalian all show that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague and does not provide fair notice to Mr. Badalian.

### MOTION TO DISMISS COUNT TEN

Count Ten of the Indictment charges Mr. Badalian with a violation of 18 U.S.C. § 1752 (a)(1), (b)(1)(A) – restricted building or grounds as follows:

On or about January 6, 2021, within the District of Columbia, the defendants, did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the Capitol and its grounds, where the Vice President was temporarily visiting, without lawful authority to do so. In so doing, DANIEL RODRIGUEZ, during and in relation to the offense, did use and carry deadly and dangerous weapon, that is, an electroshock weapon and a flagpole (in violation of 18 U.S.C. § 1752 (a)(1), (b)(1)(A)).

The charge under 18 U.S.C. § 1752 (a)(1) concern certain conduct related to statutorily restricted building on grounds.  18 U.S.C. § 1752(c) provides the following definition:

(1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area –

(A) of the White House or its grounds, or the Vice President's official residence or grounds;

(B) of a building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting; or

(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C § 1752 (c)(1)(A)-(C) (emphasis added).

The United State Capitol and its grounds are not specifically included in the definition set forth above. Rather, the government alleges that the Capitol was a "restricted building and grounds" on January 6th because it was a "building or grounds where the President or other person protected by the Secret Services is or will temporarily be visiting." 18 U.S.C. § 1752 (c)(1)(B). The "other person" as set forth in the Indictment, was then Vice president Michael Pence. Accordingly, Mr. Badalian did not violate § 1752 unless then Vice President Pence was 1) "visiting" or "temporarily visiting" the specific area that Mr. Badalian traversed; and 2) the Secret Service designated that area as a restricted zone. The government cannot establish either element for the reasons that follow.

### A. Vice President Pence was not "Temporarily Visiting" the Capitol

Then-Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia. Vice President Pence lived and worked in D.C. at his official residence, and actually worked at the Capitol Building and grounds – it was his place of employment. Vice President Pence had a permanent office "within the United States Capitol and its grounds," in his capacity as President of the Senate. On January 6th, Vice President Pence was working -- he was presiding in the Senate chamber to count the electoral votes. *See* U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer.*") (emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in or near areas where the President and Vice President were clearly "temporarily visiting". See *United States v. Bursey*, 416 F. 3d 301 (4th Cir. 2005) (defendant visiting and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *United State v. Junot*, 902 F. 2d 1580 (9th Cir. 1990) (defendant pushed his way through a restricted area where then Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by Secret Service agents); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d. 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 at protest during then-Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice President traveling *outside* of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of §1752(c)(1)(B). Vice President Pence was not traveling to a speaking event or political rally on January 6th – rather he was performing a duty of his office in a building where he had a permanent office. Based on the plain language of 18 U.S.C. § 1752, he was not "temporarily visiting" the Capitol building and §1752 does not apply as charged.

**B. The Secret Service did not "Restrict" the Capitol or its Grounds on January 6th**

The legislative history of 18 U.S.C. § 1752 and the statutory authorization of 18 U.S.C. § 30569[6] make it clear that only the United States Secret Service ("Secret Service") can restrict areas for temporary visits by the President or Vice President. A particular place does not become restricted just because the Vice President enters it; rather, the Secret Service, the agency in charge of protecting the Vice President, must create the temporary restricted zone to facilitate its duty to

---

[6] This statute authorizes the Secret Service to protect high-ranking officials, including the Vice President.

protect. Indeed, the Government has specifically argued that it is the "Secret Service" that "exercise[s] its discretion to determine the scope of the restricted area necessary to protect" a designated person. *United States v. Jabr*, Cr. No. 18-105 (PLF), ECF

#26 at page 9. The Government does not allege that any of the barriers that Mr. Badalian allegedly crossed were specifically erected for the Vice-President's visit *at the direction of the Secret Service*. On January 6, 2021, the restrictions placed on the Capitol were created by the Capitol Police, not the Secret Service.

As such, a necessary factual predicate to a 18 U.S.C. § 1752 offense is lacking, and Counts Four and Five must be dismissed for failure to state a claim.

**C.  In the Alternative, the Indictment Should be Dismissed because its Language Neither Provides Adequate Notice nor Assures that the Grand Jury Made the Determinations Required by the Fifth Amendment**.

The constitutional rights to presentment to a grand jury and adequate notice of the charges are embedded in the Fifth and Sixth Amendments to the United States Constitution and in Rule 7(c) of the Federal Rules of Criminal Procedure. In the array of January 6th cases, the government mass produced indictments identical in language with little exception. A review of Superseding Indictment against Mr. Badalian reveals that the charges lack *any* specifics regarding the alleged acts or circumstances and contains only conclusory allegations.

"[R]eal notice of the true nature of the charge" is "the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). In holding that the notice requirements of the Sixth Amendment apply to the States through the requirement of due process, the Supreme Court stated: "No principle of procedural due process is more clearly established than that notice of the specific charge [is] among the constitutional rights of every

accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas,* 333 U.S. 196,

201 (1948); *see* Joseph Story, *Commentaries on the Constitution*, § 1799 (1833) ("[T]he indictment

must charge the time, and place, and nature, and circumstances of the offense, with clearness and

certainty; so that the party may have full notice of the charge, and be able to make his defense with

all reasonable knowledge and ability.").

  The Fifth Amendment's presentment provision also requires that the facts be elucidated

sufficiently in the indictment so that the grand jury's finding of probable cause can be ascertained

and to foreclose conviction based on any offense not found by the grand jury. *See Stirone,* 361

U.S. at 215. Without specificity of charged conduct and circumstances, the court would be forced

to "guess what was in the minds of the grand jury at the time they returned the indictment," which

would "deprive the defendant of a basic protection that the grand jury was designed to secure," by

allowing a defendant to be convicted "on the basis of facts not found by, and perhaps not even

presented to, the grand jury that indicted him." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th

Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (citing *Russell v.*

*United States*, 369 U.S. 749, 770 (1962)).

  The assembly-line indictments in the January 6th cases generally, and Mr. Badalian's case

in particular, fail to fulfill either the notice or presentment requirements of the Fifth and Sixth

Amendments. There is no attempt within the indictment to fulfill Rule 7(c)'s requirement of a

"plain, concise, and definite written statement of the essential facts constituting the offense

charged." The indictment does not include *any* description of Mr. Badalian's actual conduct or the

specific circumstances involved. Furthermore, Mr. Badalian was charged under 18 U.S.C. § 1752

(b)(1)(A) yet the Indictment mentions Mr. Daniel Rodriguez's name who allegedly committed

such crime.    Accordingly, the indictment in this case does not demonstrate that the grand jury made the required finding of probable cause.

Accordingly, the indictment in this case does not demonstrate that the grand jury made the required finding of probable cause.

## III. <u>CONCLUSION</u>

For the reasons and based on the authorities cited above, counts II, III, and X of the indictment ought be dismissed.

WHEREFORE, the defendant, EDWARD BADALIAN, respectfully requests this Honorable Court enter its Order dismissing counts II, III, and X of the indictment.

**I HEREBY CERTIFY** that on the 20th day of May, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: : Kimberly Paschall, Assistant U.S. Attorney.

Respectfully submitted,

s/ Tigran Martinian

**TIGRAN MARTINIAN, ESQ.**
CSB#: 247638
Attorney for Defendant Badalian
Martinian & Associates, Inc.
2801 Cahuenga Boulevard West
Los Angeles, California 90068
Telephone: (323) 850-1900
Email: tm@martinianlaw.com

Attorney for Defendant,
EDWARD BADALIAN