TIGRAN MARTINIAN, ESQ.
CSB#: 247638
Martinian & Associates, Inc.
2801 Cahuenga Boulevard West
Los Angeles, California 90068
Telephone: (323) 850-1900
Email: tm@martinianlaw.com

Attorney for Defendant,
EDWARD BADALIAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff

DANIEL JOSEPH "DJ" RODRIGUEZ,
(Counts 1, 2, 3, 4, 6, 7, 8, 10)

EDWARD BADALIAN
(Counts 1, 2, 3, 10)

      Defendants.
_____/

Case Number: 21-cr-246

[Oral Argument Requested]

**DEFENDANT, EDWARD BADALIAN'S, REPLY TO GOVERNMENT'S OPPOSITION (ECF NO. 113) TO MOTION TO DISMISS COUNTS II, III, AND X OF THE REDACTED INDICTMENT (ECF NO. 108)**

**I. INTRODUCTION**

      On May 20, 2022, Mr. Badalian timely filed his motion to dismiss counts two, three, and ten of the Indictment. (*See* ECF No. 108; *see also* ECF No 65 (operative Indictment).) Count two, titled "Obstruction of an Official Proceeding and Aiding and Abetting," alleges that, on January 6, 2021, Daniel Rodriguez, Edward Badalian, and an unnamed codefendant and co-conspirator "attempted to, and did, *corruptly* obstruct, influence and impede an *official proceeding"*, and to corruptly alter, destroy, mutilate, and conceal a record, document, and other object with the intent to impair its

integrity and availability for use in an official proceeding, that is, the grand jury investigation into the attack on the Capitol on January 6, 2021 in violation of 18 U.S.C. §§ 1512(c)(1),(2) and 2.  (ECF No. 65 at 14 (emphasis added)).

The statute in question, titled "Tampering with a witness, victim, or an informant" provides:

> (c) Whoever *corruptly*—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise* obstructs, influences, or impedes any ***official proceeding***, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

Mr. Badalian's Motion to Dismiss focuses on the statutory terms "corruptly," "official proceeding," and "otherwise."  Mr. Badalian contends that the January 6, 2021 Congressional proceeding the government alleges he obstructed was not an official proceeding. (*See* ECF No. 108 [hereinafter Order] at 18-25.) Interpreting Section 1512(c)(2) is made in the context of the documentary and evidentiary focus of the preceding section 1512(c)(1).  That statute does not reach, as the government alleges, the general disruptive conduct alleged in the Indictment.  (*See id.* at 25-45).  Finally, relying primarily on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), Mr. Rodriguez contends the meaning of the *mens rea* component — "corruptly"— is impermissibly vague. (*Id.* at 45-52).

The Indictment's defects regarding the terms "corruptly" and "official proceeding" also infect count three, "Tampering with Documents or Proceedings," in violation of 18 U.S.C. § 1951(c)(1).  It alleges that between January 6, 2021, and on or about January 19, 2021, Mr. Rodriguez and codefendants "did ***corruptly*** alter, destroy, mutilate, and conceal a record, document, and other

2

object, and attempted to do so, with the intent to impair its integrity and availability for use in an official proceeding in violation of 18 U.S.C. § 1512(c)(1).

This Reply addresses the government's arguments in turn. In the final analysis, particularly regarding the scope of § 1512(c)(2) as cabined by the otherwise clause, this Court should reject the government's contentions and adopt the thorough and cogent reasoning and analysis set forth in *United States v. Miller*, 2022 WL 823070 (D.D.C. Mar. 7, 2022). *See also* ECF No. 86 in *United States v. Miller*, 1:21-cr-00119 (CJN) (May 27, 2022 Order denying the government's request for reconsideration).)

## II.   Argument

### A.   The January 6, 2021 Congressional Proceeding Lacked Sufficient Administration of Justice Aspects to Constitute an "Official Proceeding."

Both the language of the Indictment, and the terms of statutes, explicitly require the charged acts found in Counts Two and Three must be related to an "official proceeding." *See* 18 U.S.C. § 1512(c)(1)-(2) (2018).

The putative "proceeding" at issue is a Congressional hearing to count Electoral College votes from the 2020 presidential election pursuant to the Twelfth Amendment and 3 U.S.C. § 15. That event was mostly a formality that lacks the administration of justice framework that requires the event be considered an official proceeding. As explained in his Motion, the operative definition of "official proceeding" is found at 18 U.S.C. § 1515(a)(1)(B). (*See* Motion at 21-22.) That section, as the government recognized, does not clear away the ambiguity because it largely uses the terms "proceeding before" various entities without precisely defining the term "proceeding." (*See* Opposition, at 6 (citing *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013)).)

The government, while recognizing the importance of *Ermoian*, makes the mistake that case cautioned against. (*See* Opposition at 12 (advocating for "ordinary parlance").) Official proceeding

3

should be given a legal, rather than lay construct. *See Ermoian*, 752 F.3d at 1170 ("Several aspects of the definition for "official proceeding" suggest that the legal—rather than the lay—understanding of term "proceeding" is implicated in the statute."). The government's interpretation would lead to results such as a prosecution for demonstrating at a Congressional awards ceremony. *See* 2 U.S.C. § 801 (2018) (establishing the Congressional Award Board).)

Mr. Badalian contends both the structure of § 1515(a) and its plain terms require that the proceeding in question be judicial in nature.

Even if the legal definition governs, the government, stressing the formality and solemnness of the January 6, 2021 Electoral College certification proceeding, maintains it meets the legal definition. (*See* Opposition at 6-8.) Mr. Badalian recognizes this was a formal, important proceeding; albeit largely ministerial in function. This solemnity does not equate with a proceeding related to the administration of justice. Such a proceeding involves legal and fact-finding investigations. Proceedings where evidence is gathered. Section 1512 is designed to protect compromising those types of proceedings.

As described in Mr. Badalian's Motion, this assertion is supported by: 1) the grammatical context of the "official proceeding" definition found in § 1515; 2) the broader statutory context; 3) case law such as *Ermoian*, 752 F.3d at 1171, and *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008), which require the proceedings be akin to formal legal proceedings; and 4) case law that considered § 1512 in various contexts related to the administration of justice. *See, e.g., Arthur Anderson, LLP v. United States*, 544 U.S. 696, 708 (2005) (interpreting § 1512(c) as requiring knowledge that a defendant's actions will affect a "judicial proceeding); *accord United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) ("the phrase 'before a judge or court' in § 1515(a)(1)(A) only describes which *types* of proceedings can be considered "official," not where the criminal obstruction must occur. Obstruction of justice occurs when a defendant acts to impede the types of

4

proceedings that take place before judges or grand juries."); *see also United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (agreeing with the reasoning presented in *Ermoian* and *Ramos*).

The cases the government relies upon prove Mr. Badalian's point. For instance, *United States v. Perez*, 575 F.3d 164 (2d Cir. 2009), found that a federal Bureau of Prisons fact-finding inquiry required by regulations to occur whenever there is a use of force incident constituted an "official proceeding." *See Perez*, 575 F.3d at 168 (explaining BOP procedures required these proceedings in the aftermath of every use of force by BOP staff upon an inmate (citing 28 C.F.R. §§ 0.96(o); 552.22(j), 552.27)).) Contrary to its representations here, the government contended that the other proceedings covered by subsection 1515(a)(1), particularly court and congressional proceedings, indicate that an "official proceeding," for purposes of subsection 1512(c)(2), is one in which a witness is directed to appear and testifies under oath. *See id.*
The Second Circuit found BOP use-of-force proceedings qualified as "official proceedings" because they were adjudicative in nature. The Use of Force Program Statement, which was in evidence, contemplates more than a preliminary investigation. *See id.* at 169. It sets forth a detailed process of review and decision- making. *Id.* "After a Use of Force Report is prepared, a review panel of senior officials, including the Warden and the Associate Warden, is convened and required "to determine if policy was adhered [to], and complete the standard After–Action Report (BP–E586), indicating the nature of the review and findings." *Id.* "The panel 'should also decide if the matter requires further investigation,' in which event the matter may be referred for higher level review." *Id.*

"Because the review panel must 'determine' if there has been a violation of BOP policy, must make 'findings,' and may 'decide' to refer the matter to senior departmental authorities, its work is sufficiently formal to satisfy the 'official proceeding' element of subsection 1512(c)(1)." *Id.*

5

This is the point made by Mr. Badalian. To constitute an "official proceeding" the event in question must include, at least in part, an adjudicative, administration of justice component. Unlike the quasi-judicial proceeding at issue in *Perez*, the January 6, 2021 hearing lacks these features.

Similarly, another case relied upon by the government, United States v. Kelley, 36 F.3d 1118 (D.C. Cir. 1994), found that a formal investigation conducted by the Agency for International Development (AID) qualified as a "official proceeding" for purposes of 18 U.S.C. § 1505. (See Opposition at 7.) In so holding, the court emphasized the Inspector General's office of AID is charged with the duty of supervising investigations relating to the proper operation of the agency. See Kelley, 36 F.3d at 1127 (citing 5 U.S.C. App. 3 § 2). "In addition, the Inspector General is empowered to issue subpoenas and to compel sworn testimony in conjunction with an investigation of agency activities." Id. "Accordingly, the Inspector General's inquiries, albeit preliminary, constitute a 'proceeding' within the meaning of § 1505." Id.

Once again, the type of proceedings that qualify as "official proceedings" is determined by their function and ability to conduct adjudicative functions. To engage in fact-finding and determinations that are within the rubric of administering justice. The January 6, 2021 proceeding charged in the Indictment lacks these features and, therefore, does not constitute and "official proceeding" for the purposes of 18 U.S.C. § 1512(c).

  **B.**  **Count Two Fails to State an Offense Because the Conduct it Charges is Beyond the Scope of § 1512(c)(2)'s Focus on Obstruction Involving Documents and Other Items of Evidentiary Value.**

Mr. Badalian's second challenge is broader—§ 1512(c)(2) does not criminalize his alleged actions on January 6, 2021. He contends that a proper reading of section 1512(c)(2) prohibits only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion. The obstructive conduct requires some nexus to tangible

evidence.

The allegations in the Indictment do not allege this type of conduct. Therefore, Count Two of the Indictment fails to state a viable offense and must be dismissed. The government counters that its interpretation of § 1512(c)(2) falls broadly within its scope and that Judge Nichols' ruling to the contrary in *United States v. Miller*, 2022 WL 823070 (D.C.C. Mar. 7, 2022), is incorrect. (*See* Opposition, at 16- 28.) The government expends a lot of energy arguing that *Miller* was wrongly decided. The government made the same arguments in its Motion for Reconsideration of Judge Nichols' decision. (*See* ECF No. 75 in *United States v. Miller*, 1:21-cr-00119 (CJN).) Judge Nichols rejected those contentions in his Order denying that Motion. *See* ECF No. 86 in *United States v. Miller*, 1:21-cr-00119 (CJN) [hereinafter *Miller* Reconsideration Order].

Mr. Badalian concurs with and adopts Judge Nichols' finding that § 1512(c)(2), which can be, and has been, construed many ways, is fatally ambiguous. This ambiguity triggers application of the rule of lenity which cautions toward a limiting construction of a penal statute.

The rule of lenity provides that, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). The government is correct that the rule of lenity only applies when other means of interpretation have been exhausted. *See Moskal v. United States*, 498 U.S. 103, 108 (1990)); *accord Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.") (citations omitted)).

The government contends, correctly, that what is required is a "grievous ambiguity." (Opposition at 20 (citing *Barber*, 560 U.S. 488).) This is a high standard that is met in the case at

7

bar. As Judge Nichols' decision amply demonstrates, there are at least three discrete ways of interpreting § 1512(c)(2) and the import of its use of the term "otherwise." *See Miller*, at *6-11. Of the three interpretations, the most plausible, and limited, is the interpretation that § 1512(c)(2) is limited by § 1512(c)(1). Subsection (c)(2) operates as a residual clause or catchall for the prohibition contained in subsection (c)(1). *See id*. at *9. Under this reading, the word "otherwise" links the two subsections but the link or commonality is found in the conduct prescribed by subsection (c)(1). *Id.* The *Miller* decision resorts to all applicable statutory canons of construction, the statute's development history, and its legislative history, before reaching the conclusion that the limiting interpretation must control as the statute is grievously ambiguous. *See id*. at *11-16.

On rehearing, Judge Nichols found no defect- in its analysis. *See Miller* Reconsideration Order at 1-3. Nor was the court swayed by the same argument the government primarily relies on here—other district courts have adopted the government's interpretation. In fact, Judge Nichols surveyed that case law and correctly determined that each court appears to reach its conclusion for different reasons and applies different interpretations to § 1512(c)(2). *See id.* at 2 n.1.

For instance, some decisions conclude that § 1512(c)(1) acts as a carve-out from § 1512(c)(2) broad scope. *See, e.g., United States v. Reffit*, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022). Others interpret "otherwise" to require a link between the subsections that is tethered together only by the requirement that the activity impact official proceedings. *See United States v. Montgomery*, 2021 WL 6124951, at *12 (D.D.C. Dec. 28, 2021). Mr. Badalian recognizes that contrasting judicial decisions alone do not prove the existence of statutory ambiguity. *See Moskal*, 498 U.S. at 108 ("Nor have we deemed a division of judicial authority automatically sufficient to trigger lenity." (citing *United States v. Rodgers*, 466 U.S. 475, 484 (1984)).) Yet here, given the uncertainty of the statutory proscription, and that precedent such as *Begay v. United States,* 553 U.S. 137 (2008), suggest the term "otherwise" should be read as a word of limitation, the fact that other district courts have been inconsistent in

8

assigning meaning to § 1512(c)(2) suggests the statute is fatally ambiguous.

Further buttressing this contention is the fact that the previous Attorney General Barr agrees with Mr. Badalian's interpretation. *See* Memorandum from William Barr to Deputy Attorney General Rob Rosenstein and Assistant Attorney General Engel of June 8, 2018 [hereinafter Barr Memo). That, once again, a reasoned legal mind reaches a different interpretation of § 1512(c)(2) than the government demonstrates the ambiguity inherent in the statute.

Attorney General Barr relied on the same cases emphasized in Mr. Rodriguez's Motion—*Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015). He explained:

> I think it is clear that the use of the word "otherwise" in the residual clause [of section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word "otherwise" does no work at all and is mere surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding read the work "otherwise" out of the statute altogether. But any proper interpretation of the clause must give effect to the work "otherwise"; it must do some work.

Memo. At 4.

The Memo discusses *Begay* and *Yates* and how those cases reach the same conclusion as Judge Nichols —" specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause." *Id.* As the Supreme Court has suggested, *Begay v. United States*, 553 U.S. 137, 142-143 (2008), when Congress enumerates various specific acts constituting a crime and then follows that enumeration with a residual clause, introduced with the words "or otherwise," then the more general action referred to immediately after the word "otherwise" is most naturally understood to cover acts that cause a similar kind of result as the preceding listed examples, but cause those results in a different manner." *Id*.

Under the statute's "plain language and structure" the most "natural and plausible" reading

of § 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms in § 1512(c)(1). *Id.* Subsection 1512(c)(2) encompasses conduct "that is directed at undermining a proceeding's truth-finding function through actions impairing the integrity and availability of evidence." *Id*. at 4-5. Caselaw reflects this application of § 1512(c)(2) as only applying to "attempts to interfere with, or render false, evidence that would become available to a proceeding." *Id*. at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (concerning soliciting tips from corrupt cops to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (involving disclosing the identity of an undercover agent to the subject of a grand jury drug investigation).

The government dismisses the impact of the legislative history of § 1512(c). (*See* Opposition at 13.) Attorney General Barr did not. That legislative history reveals the section "was expressly designed to 'clarify' and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." (Memo, at 5-6.) "The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swaths of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibition on the impairment of evidence." (*Id.* at 6.)

Moreover, former Attorney General agrees with Mr. Badalian that interpreting § 1512(c)(2)'s residual clause broadly would render superfluous virtually every other provision of Title 73. Reading "the residual clause as an all- encompassing proscription cannot be reconciled either with the other subsection of § 1512, or with the other obstruction provision in Title 18 that must be read *in pari passu* with those in § 1512." *Id.* at 5.

If this Court were to interpret § 1512(c)(2) as broadly as the government espouses, it would subsume virtually all other obstruction provisions of Title 18. (*See id*. at 5.) This violates the canon against surplusage which "is strongest when an interpretation would render superfluous another part

10

of the statutory scheme." *Marx v. General Revenue Corp.,* 568 U.S. 371, 386 (2013).

In sum, employment of canons of construction, statutory history and structure, and legislative history all reveal § 1512(c)(2) to be grievously ambiguous. Given this, the most limiting construction of subsection applies. It must be read *in pari materia* with § 1512(c)(1). It applies only to obstructive behavior directed toward documents or other tangible items of evidentiary value. This construction is not only required by the rule of lenity, it enjoys the advantage of being the most natural and plausible interpretation of the subsection.

### C. The *Mens Rea* Requirement of "Corruptly" is Unconstitutionally Vague Under the Government's Construction of the Statute.

Mr. Badalian's motion contends that the government's interpretation of § 1512(c)(2) is void-for-vagueness as applied to Mr. Badalian and that the government's interpretation of "corruptly" fails this Circuit's *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), test.

The government disagrees, contending Mr. Badalian had fair notice that his actions were punishable under § 1512(c)(2). (*See* Opposition at 31-34.)

In order to comply with due process, a statute must give fair warning of the prohibited conduct. *See Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964); *accord Johnson v. United States,* 576 U.S. 347, 351 (1964) (explaining a statute is unconstitutionally vague if "it fails to give ordinary fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement").[9]

It is problematic to apply the term "corruptly" to Mr. Badalian's alleged conduct. It is true that the term is defined in 18 U.S.C. § 1515(b) as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying or other information." However, that definition is only applicable to § 1505. *See* § 1515(b). Accordingly, this Court must look elsewhere for the operative definition. That journey starts with *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

11

Mr. Badalian previously described that case in some detail. (*See* Opposition at 49-51.) In essence, it found that the term "corruptly" was vague on its face. "[I]n the absence of some narrowing gloss, people must guess at its meaning and differ as to its application.'" *Poindexter*, 951 F.2d at 378 (quoting, without citation*, Connally v. General Construction Company*, 269 U.S. 385, 391 (1926)). "Corruptly" must have some meaning or the statute could be employed in a manner that was contrary to legislative intent and could lead to absurd results. *See id*. at 377-78.

Contrary to the government's assertions, the same problems exist in the instant prosecution. (*Compare* Opposition at 31-33.) In Count Two, the government accuses Mr. Badalian of corruptly obstructing, influencing, and impeding and official proceeding by, it is assumed, entering and remaining in the U.S. Capitol without authority and then engaging in acts of civil disobedience and disruptive, violent, conduct. (*See* ECF No. 65 at 14.)

As in *Poindexter*, in the absence of "some narrowing gloss," Mr. Badalian must guess as to the meaning of "corruptly" given the broad interpretation the government has given § 1512(c)(2). Corruptly obstructing a proceeding before Congress does not necessarily encompass entering and remaining in the Capitol and engaging in disruptive conduct. Is riotous behavior inherently corrupt? While philosophers may debate the issue, a criminal defendant is not required to be so inquisitive. What is required is fair and concrete notice. *Cf. Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) ("a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits"). It is not sufficiently apparent that Mr. Badalian's alleged conduct can be properly deemed "depraved," "evil," "immoral," or "improper." *Cf. Poindexter,* 951 F.2d at 379. Moreover, while the indictment alleges that Mr. Rodriguez and the redacted co-defendant engaged in violent conduct, there are no such allegations as to Mr. Badalian.

Allowing the government to proceed also raises the specter of arbitrary enforcement. As pointed out in *Poindexter*, insufficient narrowing of what conduct is corrupt would allow the statute

12

to be applied to allow conduct that potentially influences Congressional proceedings. *See id*. at 377-78. An "absurd result that the Congress could not have intended in enacting the statute." *Id.* at 378.

Finally, the definition of "corruptly" could be limited to save its constitutionality. For example, the Ninth Circuit defines "corruptly" as acting "with the purpose of obstructing justice." *United States v. Bonds*, 784 F.3d 582, 583 (9th Cir. 2015) (citing *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981)). This is problematic for the government, however, because this non-vague interpretation substantiates Mr. Badalian's argument that a violation of § 1512(c)(2) must relate to a proceeding related to the administration of justice.

Given the Indictment does not allege Mr. Badalian acted with the purpose of obstructing justice attendant to an adjudicative proceeding, even with the proffered non-vague definition of "corruptly," Counts Two and Three of the Indictment must still be dismissed.

### D. The Indictment Lacks Sufficient Facts Which Would Apprise Mr. Badalian of Allegedly Unlawful Conduct.

An indictment must contain the essential facts constituting the charged offense. *United States v. Miller*, Criminal Action 1:21-cr-00119 at *3 (CJN) (D.D.C. May 27, 2022).

The allegation that the act charged was committed in violation of law is insufficient unless, independent of the allegation, facts are articulated which show that the law has been violated. *Id*. While reference to the statute may direct the Court's and the accused's attention to the particular statute under which the case is being prosecuted, it forms no part of the description of the offense. *Id*.; *The Hoppet*, 11 U.S. (7 Cranch) 389, 393 (1813); Joseph Story, *Commentaries on the Constitution of the United States* § 1779 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances, of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

"[t]he true test is, not whether [the criminal indictment] might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." *Cochran v. United States*, 157 U.S. 286, 290 (1895); *United States v. Cruikshank*, 92 U.S. 542, 558-59 (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances…[T]he indictment should state the particulars, to inform the court as well as the accused. It must be made to appear-that is to say, appear from the indictment, without going further-that the acts charged will, if proved, support a conviction for the offence alleged.").

To satisfy the protections that the Sixth Amendment guarantees, "*facts* are to be stated, not conclusions of law alone." *Cruikshank*, 92 U.S. at 558 (emphasis added). In other words, "[t]he accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense." *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984).

"The . . . generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980). Furthermore, and importantly for present purposes, '[i]t is an elementary principle of criminal pleading that where the definition of an offense . . . includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species - it must descend to particulars.' *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971) (first alteration in original) (quoting *Cruikshank*, 92 U.S. at 558). Thus, an indictment that mirrors the exact language of a criminal statute may nevertheless be dismissed as constitutionally deficient if it is 'not framed to apprise the defendant 'with reasonable certainty of the nature of the

accusation against him.' ' *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877))."

*Miller*, Criminal Action 1:21-cr-00119 (CJN), at *5 (quoting *United States v. Hillie*, 227 F.Supp.3d 57, 71-72 (D.D.C. 2017) (Jackson, K.B., J.) (noncitation alterations in original).

In certain circumstances, an indictment that "echoes the operative statutory text while also specifying the time and place of the offense" can be sufficient. *Id*. at *5-6 (quoting *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018); *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014). But those cases involve criminal statutes that are sufficiently precise such that merely echoing the statutory language in the indictment provides enough specificity to apprise a reasonable defendant of his allegedly unlawful conduct. *Id*. at *6 (citing *Williamson*, 903 F.3d at 130-31). When a statute is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue, merely echoing that language is *not* enough." *Id*. In such cases, "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id*. (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881).

The Redacted Indictment alleges that Mr. Badalian corruptly altered, destroyed, mutilated, and concealed a record, document, or other object to prevent evidence of their unlawful acts on January 6, 2021 from being used in an official proceeding, that is, the grand jury investigation into the attack on the Capitol on January 6, 2021. Nothing in the Indictment's four corners has a reasonable nexus with a document, record, or other object evidencing Mr. Badalian's allegedly unlawful acts. See *Id*. at *9. The Court cannot presume that the grand jury passed judgment on this essential element of the offense. *Id*. (citing *United States v. Akinyoyenu*, 199 F.Supp. 106, 109-10 (D.D.C. 2016). The Indictment's reference to a record, document, or other object, and the grand jury investigation into

15

the attack sheds no light on the *actus reus* that Mr. Badalian is alleged to have taken. See *Id*. The only allegation is that Messrs. Rodriguez, Badalian, and the redacted co-defendant attempted to mutilate or destroy photographs and videos taken by "PERSON ONE in order to prevent such evidence from being presented to the grand jury investigating the attack…" There is no allegation that the photographs and videos contained evidence of criminal conduct by Mr. Badalian. Instead, the Indictment alleges that, on two occasions, the redacted co-defendant attempted to have PERSON ONE transfer the photo and video files to a "secure hard drive."

Since the Indictment did not allege that Mr. Badalian attempted to alter, destroy, mutilate, and conceal the PERSON ONE'S photo and video files, it fails to state an offense against Mr. Badalian, a matter that the Government did not address in its Opposition.

Last, Mr. Badalian stands on, and reiterates, his arguments set forth in his motion to dismiss Count Ten of the Redacted Indictment.

**I HEREBY CERTIFY** that on the 5th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Kimberly Paschall, Assistant U.S. Attorney.

    Respectfully submitted

    s/ Tigran Martinian

    **TIGRAN MARTINIAN, ESQ.**
    CSB#: 247638
    Attorney for Defendant Badalian
    Martinian & Associates, Inc.
    2801 Cahuenga Boulevard West
    Los Angeles, California 90068
    Telephone: (323) 850-1900
    Email: tm@martinianlaw.com

Attorney for Defendant,
EDWARD BADALIAN