IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CRIMINAL NO. 21-cr-246 (ABJ) |
| ) | |
| ) | |
| EDWARD BADALIAN   ) | |

## Defendant's Response to the Government's Motion in Limine

Edward Badalian, through his Attorney, Robert M. Helfend, respectfully files this response to the governments motions in limine, ECF Nos. 133 & 134.

1. Background

Mr. Badalian is not alleged to have entered the Capitol until after the proceedings had been suspended and then-Vice President Pence had left the Capitol. He is alleged to have entered the United States Capitol along with hundreds of people and followed others through an open window. There is no allegation that he injured any person, possessed any weapons, or used mace or irritants. He did not damage, loot, or take away any property. He did not fight with police, throw things, or attempt to do so. And he did not direct or help anyone to do any of those things. In fact, he stopped another rioter from damaging a window. In a recent bench trial, Judge McFadden found that such conduct does not support a finding that a defendant acted with the intent to impede or disrupt the orderly conduct of government business. *See United States v. Griffin*, 21-cr-92. The worst that has been alleged against Mr. Badalian is that he has associated

1

himself with Mr. Rodriguez and the other unnamed co-conspirator, behavior the First Amendment protects. 1

2. The Law

Pretrial motions in limine "are an important mechanism to effectuate th[e] goal" of "conduct[ing] a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means." *United States v. Bikundi*, 80 F. Supp 3d 9 (D.D.C. 2015) (citing Fed. R. Evid. 103(d)). In evaluating the admissibility of proffered evidence on a pretrial motion in limine the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to, inter alia, Federal Rules of Evidence 401 and 403. Id. "The burden is on the introducing party to establish relevancy" as well as admissibility. *Dowling v. United States*, 493 U.S. 342, 351 n. 3, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be deemed inadmissible and subject to exclusion on multiple grounds, including that its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472, 403 U.S. App. D.C. 410 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes).

---

1 *See Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373, 2382 (2021); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982).

The Rule 403 balancing question is whether the "reverberating clang" of the defendant's inflammatory statements at issue might "drown all weaker sounds" presented by the rest of the evidence. *Shepard v. United States,* 290 U.S. 96, 104 (1933) (Cardozo, J.).

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, the Court may in certain circumstances admit "evidence of any other crime, wrong, or act," Fed. R. Evid. 404(b)(1), for a purpose other than proving that on a particular occasion the person acted in accordance with a character trait, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Even where the Court determines that proffered evidence satisfies Rule 404(b)(2), the evidence is not admissible unless it also satisfies balancing under Rule 403. E.g., United States v. Bell, 795 F.3d 88, 100 n. 12 (D.C. Cir. 2015).

3. Argument

First, the government must establish that a conspiracy exists before introducing co-conspirator statements. Second, the defendant respectfully requests that the Court take these statements on a statement by statement basis as they come in during trial. Third, the defense asks that the Court make a FRE 403 balancing decision at this time. And finally, any evidence that the Court finds would be admissible only against co-defendant Rodriquez, a cautionary instruction would be requested by Mr. Badalian at that time. 2

---

2 Specifically, any evidence against Rodriguez solely, such as his behavior at the Lower West Terrace tunnel that involves former MPD officer M.F. should not come in against Mr. Badalian and a cautionary instruction would be requested by Mr. Badalian at that time. The same applies to statements of Mr. Rodriques. *See e.g.* Gov't Br. 18-19, "there will be blood. Welcome to the revolution." This is not probative of what Mr. Badalian intended.

Defendant notes that the statements of Mr. Badalian highlighted in the government's memo do not automatically pertain to the charges against Mr. Badalian. These statements could be and the defense intends to argue that Mr. Badalian's statements pertained to his trip to DC with his friends, but not to interrupt the certification. The government argues that Mr. Badalian's statement in the "Patriots Maga Gang" telegram chat are all evidence of his intent to obstruct the vote. This is not so. For example, the first message the government mentions in their brief, "Ok, so who is down to drive to DC Jan 4?" says nothing about his purpose in going to DC. Neither do the next two messages Badalian allegedly sent: "we need to violently remove traitors and if they are in key positions rapidly replace them with able bodied Patriots." And, even before asking everyone if they want to go to DC, Badalian allegedly says "congress can hang. I'll do it. Please let us get these people dear God." Gov't Br. 3. Again, no mention of stopping the vote. The government doesn't argue that preparations of Mr. Badalian are evidence that he intended to stop the vote. Likewise, simply telling someone you don't want them to use your name is not a co-conspirator statement if you don't know what your alleged co-conspirators have said to this person in that regard. The defense contends that this statement was not made by Mr. Badalian, nor was he present when it was uttered.

Many of these statements are of a type that the D.C. Circuit in *United States v. Munchel*, 991 F.3d 1273, 1287 (D.C. Cir. 2021) has characterized as "rhetorical bravado" when measured against a defendant's lack of actual violence. And, the Supreme Court has characterized similar statements as "offhand remarks" of hostility protected by the First Amendment. *See Noto v. United States,* 367 U.S. 290, 297 (1961). Therefore, Mr. Badalian asks that the Court not make a blanket ruling but consider each statement and the context in which it is given or said.

With reference to the Government's Omnibus motions in limine, Mr. Badalian responds as follows:

Mr. Badalian believes the parties with enter into several stipulations regarding multimedia such as open source videos and similar evidence. This would include metadata foundations. However, The government has proposed video exhibits that do not depict the defendants' activities on January 6 and/or are selectively edited by the news media or the government in prejudicial and misleading ways. It may also display videos of Badalian, having nothing to do with January 6. These are all inadmissible.

The government proposes to introduce video clips captured at the Capitol on January 6 by, among other protesters. Some feature highly charged scenes of mayhem and bloodshed. But it does not appear that many of them capture Mr. Badalian's activities. These clips may not even be relevant, as they do not make it more or less likely that Mr. Badalian undertook the charged conduct with the relevant intent. But even if they somehow met the test of relevance, their probative value regarding the defendant in this case would be substantially outweighed under Rule 403 by the risk of unfair prejudice, confusing the issues, and misleading the jury. In addition, because the government intends to introduce separate video clips that actually depict the defendants' activities, these videos would "needlessly present cumulative evidence." Fed. R. Evid. 403. This would include CCTV and BWC.

Mr. Badalian does not intend to elicit answers to questions that would cause the exact locations of security cameras in the Capitol to be revealed. Mr. Badalian objects to any testimony by a Secret Service Agent about any detrimental effect January 6th had on then Vice President Pence and his family. This would be more prejudicial than probative, as discussed,

*infra.* Mr. Badalian does not intend to question any Secret Service witness about Secret Service protocols, motorcades, protectees or similar super-secret procedures used by the Agency.

Mr. Badalian may seek to introduce some of his statements at trial but has not decided which statements, if any, will be used in his defense. Mr. Badalian respectfully asks the Court to reserve ruling on this issue and carry it with the testimony as it comes in at trial. Mr. Badalian believes that the Government's argument asking this Court to preclude any First Amendment defense is prohibited not only by the First Amendment itself, but also by the rules of Evidence. If the statement is reliable and relevant, it should be weighed by this Court like any other statement. Mr. Badalian does not intend to put forth a selective prosecution, entrapment or public authority defense. As this Court knows, new evidence is revealed each week as more trials go forward. For this reason, Mr. Badalian will not bring up "Agent Provocateurs" without first approaching the bench and/or making a proffer of evidence outside the presence of the jury.

Mr. Badalian believes Good Character evidence would be especially relevant to this case and would only be proposed if relevant. Mr. Badalian will not mention penalties or collateral consequences if convicted. At this time, Mr. Badalian does not intend to claim self-defense.

        Respectfully submitted,

By: \_\_\_\_/s/_____
     Robert M. Helfend
     California Bar No. 113380
     23838 Pacific Coast Hwy., No. 309
     Malibu, CA 90265
     310-456-3317
     rmhelfend@gmail.com

By: \_\_\_\_\_/s/_____
Kira Anne West
DC Bar No. 993523
712 H Street N.E., Unit 509
Washington, D.C. 20002
Phone: 202-236-2042
kiraannewest@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 17th day of January, 2023, a copy of same was electronically filed using the CM/ECF system and thus delivered to the parties of record and in pursuant to the rules of the Clerk of Court.

*/s/ Robert Helfend*