```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-246-1
vs.                                )  No. 21-246-2
                                   )
DANIEL RODRIGUEZ and               )  March 3, 2022
EDWARD BADALIAN,                   )  2:06 p.m.
                                   )  Washington, D.C.
                Defendants.
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## TRANSCRIPT OF STATUS CONFERENCE
### BEFORE THE HONORABLE AMY BERMAN-JACKSON
### UNITED STATES DISTRICT COURT JUDGE

<u>**APPEARANCES**</u>:

FOR THE UNITED STATES:

        KIMBERLY L. PASCHALL
        TARA RAVINDRA
        U.S. Attorney's Office
        for the District of Columbia
        601 D Street, NW
        Washington, DC 20530
        (202) 252-2650
        (202) 252-7672
        Email: kimberly.paschall@usdoj.gov
        Email: tara.ravindra@usdoj.gov


FOR DEFENDANT RODRIGUEZ:

        REBECCA ANN LEVY
        MARGARET W. LAMBROSE
        KATHERINE TANAKA
        Federal Public Defender
        District of Nevada
        411 E. Bonneville Avenue, Suite 250
        Las Vegas, NV 89101
        (702) 388-6577
        Email: rebecca_levy@fd.org
        Email: maggie_lambrose@fd.org
        Email: katherine_tanaka@fd.org

*(**Appearances Continued**)*

**APPEARANCES (Continued)**


FOR DEFENDANT BADALIAN:

                TIGRAN MARTINIAN
                Martinian & Associates, Inc.
                2801 Cahuenga Boulevard West
                Los Angeles, CA 90068
                (323) 850-1900
                Email:  tm@martinianlaw.com


Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
                Official Court Reporter


*This hearing was held via videoconference and/or telephonically and is, therefore, subject to the limitations associated with audio difficulties while using technology, i.e., audio feedback, static interference, etc.*


Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1                          **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  The United States District

3     Court for the District of Columbia is now in session.  The

4     Honorable Amy Berman-Jackson presiding.  Everyone, please

5     come to order.

6              Your Honor, this afternoon this is a video status

7     conference.  We have Criminal Case No. 21-246-1 and

8     21-246-2, the United States of America v Daniel Rodriguez

9     and Edward Badalian.

10             Would counsel for the government please identify

11    herself and her colleague for the record.

12             MS. RAVINDRA:  Good afternoon, Your Honor.

13    Tara Ravindra on behalf of the United States along with my

14    colleague Kimberly Paschall.

15             THE COURT:  All right.  Good afternoon.

16             THE COURTROOM DEPUTY:  Would counsel for

17    Mr. Rodriguez please identify herself and her colleagues for

18    the record.

19             MS. LEVY:  Good afternoon, Your Honor.

20    Rebecca Levy, Margaret Lambrose and Katherine Tanaka, on

21    behalf of Mr. Rodriguez.  He's present via video technology.

22    He is in custody.

23             THE COURT:  All right.

24             THE COURTROOM DEPUTY:  Would Mr. Rodriguez unmute

25    for a minute and state for the record his name and verify

```
 1    that he is able to both see and hear the judge and the

 2    attorneys.

 3              DEFENDANT RODRIGUEZ:  Yes.  Good afternoon.

 4    Daniel Joseph Rodriguez.  Nice to see everybody.  I can hear

 5    everybody.

 6              THE COURT:  All right.  Mr. Rodriguez, while we

 7    have you, I just want to make sure that you have talked to

 8    Ms. Levy and your other attorneys about your right to be

 9    here in person today and that you agree to participate by

10    video instead for purposes of this status conference.

11              DEFENDANT RODRIGUEZ:  Yes, Your Honor.  I have

12    been in contact, and I agree.  Thank you.

13              THE COURT:  All right.  So given Mr. Rodriguez's

14    consent to proceed in this manner and the Court's continuing

15    standing orders trying to limit in-person proceedings as

16    much as possible, and the risks involved in transporting

17    people here and there, not to mention the location of

18    defense counsel, I find that it is in the interest of

19    justice to proceed in this manner in your case this

20    afternoon.

21              THE COURTROOM DEPUTY:  Counsel for Mr. Badalian

22    please identify yourself for the record.

23              MR. MARTINIAN:  Good afternoon, Your Honor.

24    Tigran Martinian on behalf of Mr. Badalian who is out of

25    custody, in my office on my right, on this zoom
```

1      videoconference.

2                  THE COURT:  All right.  Well, Mr. Badalian, can

3      you see and hear us this afternoon?

4                  DEFENDANT BADALIAN:  Yes, Your Honor.

5                  THE COURT:  Okay.  You are a little hard to see

6      because you are kind of backlit, but I can tell that there

7      is someone back there.  And I just want to make sure that

8      you have been informed that you have a right to be here for

9      this morning and that you agree to proceed from where you

10     are at this point.

11                 DEFENDANT BADALIAN:  Yes, Your Honor.

12                 THE COURT:  All right.  So given your distance

13     from the courthouse and the dangers involved in travel, I

14     also find that it's appropriate under the CARES Act to

15     proceed by video in your case.

16                 In any event, this is a status conference and not

17     an evidentiary hearing.  So that brings us to what the

18     status of the case is.

19                 Prior to this hearing I ordered the government to

20     respond to me about the status of Defendant No. 3 in this

21     case, who has yet to be present for a status conference.

22     And I permitted the government to respond *ex parte*, but then

23     asked if there was any objection to your being informed of

24     the substance of what I have been told.  So I can now tell

25     you the following for the record, which is that Defendant

1   No. 3 remains a fugitive; it is believed that he has left

2   the country, and that the government is making efforts to

3   locate and apprehend him abroad.  The details of those

4   efforts will remain *ex parte*.

5           I also had some questions about the defendants'

6   interests in the identity of the third defendant, but I am

7   not sure at this point what the defendants themselves have

8   been able to discern.  So without putting his legal name or

9   his nickname used on the public record, can counsel for

10  Mr. Rodriguez and Mr. Badalian at least indicate to me as to

11  whether based on the allegations in the indictment they are

12  aware of the identity of the third defendant?

13          MS. LEVY:  Your Honor, Rebecca Levy for

14  Mr. Rodriguez.  We do think we are aware of who that third

15  person is.

16          THE COURT:  All right.  And --

17          MR. MARTINIAN:  Your Honor, Tigran Martinian on

18  behalf of Mr. Badalian; I don't believe we know who that is.

19          THE COURT:  All right.  Are you asking -- what

20  would you be asking for at this time, Mr. Badalian?

21          MR. MARTINIAN:  At this point we are not asking

22  for anything.

23          THE COURT:  All right.  Well, then I don't think

24  there is anything I need to do with respect to that issue

25  given the current state of affairs.

1          We have established a briefing schedule already

2     for potential motions to be filed by the defendants we do

3     have since I didn't think that needed to continue to await

4     further developments.  And so I guess we're at the point

5     where I realize the discovery reports have been docketed

6     periodically, but I would still like to ask the government

7     to talk about the status of discovery in this case on the

8     record.

9          MS. RAVINDRA:  Yes.  Thank you, Your Honor.

10    Discovery has been provided.  And as the Court indicated, we

11    did file one memorandum -- (indiscernible.)

12          (High-pitched alarm/noise interruption.)

13          THE COURT:  I'm sorry.  Ms. Ravindra, the court

14    reporter has asked you to start over because you got

15    interrupted by a rather loud noise here in our courtroom.

16          MS. RAVINDRA:  Sure.

17          The government has provided discovery in this

18    matter and, as the Court indicated, we did file on the

19    docket a memorandum explaining the status of discovery in

20    the Capitol siege investigations writ large.

21          With respect to this case, we did provide some

22    additional discovery from the FBI last week.  We do intend

23    to continue providing discovery and we do believe that there

24    will be additional discovery provided in the coming weeks.

25          The government has had an opportunity to discuss

```
 1    kind of the state of the case or the status of the case with

 2    both Mr. Rodriguez's attorneys as well as with

 3    Mr. Badalian's attorney.  With regard to our discussions

 4    with Mr. Badalian's attorney, we have discussed an

 5    additional period of time to continue trying to find ways to

 6    resolve the case as well as for us to continue providing

 7    discovery and for them to continue reviewing.  I am not sure

 8    where --

 9              (High-pitched alarm/noise Interruption.)

10              THE COURT:  All right.  You stopped and you said

11    you seek additional time to potentially resolve -- with

12    respect to Mr. Badalian and also to provide more discovery.

13    And then you started -- and I think you were headed to

14    Defendant Rodriguez.  And you said, "I am not sure" -- and

15    that's where we started beeping.

16              MS. RAVINDRA:  Yes.  I am not sure, as we sit here

17    today, where they would like to go in terms of a status

18    motion schedule.  So I will defer to Ms. Levy on that.

19              THE COURT:  Okay.  And a plea offer has been

20    conveyed to both defendants?

21              MS. RAVINDRA:  No, Your Honor.  We have been in

22    discussion with both attorneys separately on potential

23    pretrial resolutions.

24              THE COURT:  Well, that's what -- I meant:  Have

25    you conveyed a plea offer to each of the two defendants?
```

 1          MS. RAVINDRA:  No, Your Honor.

 2          THE COURT:  So you are just in discussions about

 3    what it might consist of?

 4          MS. RAVINDRA:  Yes.  Correct.

 5          I would be happy to discuss each individual -- we

 6    would be happy to discuss each individual case separately

 7    and under seal with respect to the status of those

 8    discussions if the Court wishes to.

 9          THE COURT:  Okay.  I was just trying -- I am not

10    asking for the substance of your discussions, that's not my

11    department.  I just wanted to know if an offer had been

12    extended to either -- to each defendant.  And I wasn't

13    sure -- when you said plea offers had not been extended,

14    that seemed surprising; so I just want to make sure I

15    understood what you were telling me.

16          MS. RAVINDRA:  That's correct.  No plea offers

17    have been extended by the government.

18          THE COURT:  Okay.  And with respect to discovery,

19    while I understand that it continues to be ongoing,

20    particularly in relationship to the material relating to all

21    January 6th defendants, is the discovery with respect to the

22    specific case and the specific defendants largely complete

23    at this point?

24          MS. RAVINDRA:  We do anticipate that there will be

25    additional discovery provided to defense counsel with

1    respect to the specific case and specific defendants in this

2    matter.

3              THE COURT:  Well, when would you anticipate having

4    provided Mr. Rodriguez, who has been incarcerated the

5    longest -- feeling like you have pretty much provided him

6    with everything that you have?

7              MS. RAVINDRA:  I don't know that I can say for

8    certain, Your Honor, because obviously there are some

9    materials relating to the superseding indictment as well

10   as -- there is the consideration the government is giving to

11   the third codefendant that remains sealed at this time.

12             THE COURT:  All right.

13             Well, Ms. Levy, let me start with you in terms of

14   what your position is on all of that and what you want to

15   tell me about the status of the case from your perspective.

16             MS. LEVY:  Your Honor, I will start just in terms

17   of -- the government has been diligent in speaking with us

18   about potentially resolving the case.

19             The problem that we have, Your Honor, is that on

20   Friday, February 25th, the government provided some new

21   discovery; we uploaded that on Monday, February 28th.  And

22   in that discovery it does appear that there are case

23   specific reports including SWAT reports and other types of

24   specific reports that relate to my client's arrest --

25             THE COURT:  Ms. Levy, I am having a little bit of

1    trouble hearing you.  You said you got more discovery on the

2    25th, you uploaded it on the 28th.

3          But then -- it wasn't quite clear what you were

4    saying what was or wasn't there.  I don't know if you can

5    get a little closer to the microphone or speak a little

6    slower, but I did not catch that.

7          MS. LEVY:  Yes, Your Honor.  My apologies.

8          The discovery that we just recently received

9    contained reports including such as SWAT reports from

10   Mr. Rodriguez's arrest.  This had been discovery we had

11   requested prior to our filing of the motion to suppress in

12   the case.

13         We are concerned about this case-specific

14   discovery being disclosed so late.  We discussed it with the

15   government on March 1st and followed up with some emails on

16   March 2nd requesting information from the government such as

17   when did they receive the discovery they just recently

18   provided to us; again, some of which appears to have been

19   generated in March of 2021, some of which was generated, it

20   appears, in October of 2021.

21         We are concerned about this late discovery and we

22   would request that the Court set a status in perhaps two

23   weeks from now, which I know is soon, but we have not been

24   able to really discern all of this new discovery and have

25   not yet, understandably, received the follow-up from the

1     government regarding our questions and concerns regarding

2     this discovery.

3              THE COURT:  Well, I am happy to set another status

4     conference to talk about this issue.  I am not sure how it

5     bears directly on what we're talking about now.  I am not

6     even sure how it would bear directly on the motion because I

7     think, from what I understand, the testimony -- the motion,

8     I am not sure how much this bears on any of the

9     determinations I made at the time of the motion.

10             Are you concerned that there are aspects of the

11    motion you would be asking me to reconsider based on this

12    information?

13             MS. LEVY:  We're concerned that perhaps some of

14    the discovery would go to the credibility of the witness,

15    Your Honor.  So we need to look at all of the discovery,

16    compare that against your oral order; and that's why we're

17    asking for, perhaps, a shorter time for us to reconvene

18    regarding these discovery concerns that we have.

19             THE COURT:  All right.  Well, I don't have any

20    problem setting another status hearing within a short period

21    of time.  I guess I am not sure you are talking about -- to

22    talk about the discovery or to continue the conversation

23    that we are -- about the status of the case and whether

24    there is going to be a disposition or which way we're going

25    and setting a schedule, and all of that?

1          MS. LEVY:  Well, Your Honor, at this point we're

2     simply unable to tell the Court the direction that we are

3     headed right now because of this discovery that we just

4     received --

5          THE COURT:  Okay.  That's what I was trying to

6     understand.

7          All right.  Well, let me find out what the

8     situation is with the codefendant to figure out whether

9     we're setting a follow-up hearing for both parties or not.

10          I know that Mr. Martinian, with respect to his

11     client, had proposed filing, potentially, motions but needed

12     time to prepare them.  And there was somewhat of a gap in

13     time between when you told me how much time you needed and

14     when I issued the order, but I tried to bake the time you

15     needed into the order.

16          So are you looking for another status hearing

17     between now and the date your motions are due?

18          MR. MARTINIAN:  Your Honor, we are in a position

19     where we are consistently getting new discovery.  The

20     government is very helpful in pointing us to what is where.

21     It's obviously extensive discovery.

22          I would say we don't need such a short time frame

23     for the next status conference.  But I would say we would

24     probably need another status conference before we're able to

25     diligently file any motions if necessary.

```
 1              THE COURT:  All right.

 2              When would you propose, Ms. Levy, to get together

 3      again with respect to your client?

 4              MS. LEVY:  Your Honor, if the Court is available,

 5      I would propose two weeks from now at the same time.

 6              THE COURT:  My availability in two weeks is a

 7      matter of -- it's largely a mystery to me at the moment

 8      given that I am on the verge of a trial that may or may not

 9      proceed.  So what I will probably do is set something that's

10      late enough in the day that would work under either

11      scenario, and that probably works for you West Coast people

12      anyway.  So this is what --

13              THE COURTROOM DEPUTY:  March 3, Your Honor.

14              THE COURT:  -- March 3rd.  Okay.

15              So two weeks would be March 17th.  And so why

16      don't we set it -- can we set it for March 17th, at 4 p.m.?

17              No?  We cannot?

18              THE COURTROOM DEPUTY:  His facility has

19      availability from 2 to 4.

20              THE COURT:  Two to 4, okay.  Let's set it for

21      March 17th, at 3 p.m., Eastern Standard Time, by video.  And

22      if I am in trial, we'll just break to handle that matter.

23      Everyone who has been in the courtroom all day would

24      probably appreciate that.

25              And then, Mr. Martinian, it's up to you and your
```

1    client if you want to participate in that hearing.  If we

2    don't have anything to take up in your case at that time, we

3    don't have to; but we'll have the video information shared

4    with you as well because it is a status conference in a case

5    in which you are now a codefendant.  And then, at that time,

6    we can figure out what date if any to set with respect to

7    your client in the future.

8              Does that make sense to everybody?

9              MR. MARTINIAN:  Thank you, Your Honor.

10             THE COURT:  Ms. Ravindra, you were nodding.  I

11   take it that works for you as well.

12             MS. RAVINDRA:  Yes, Your Honor.

13             THE COURT:  Okay.  So that is what we'll do.

14             Given your request, Ms. Levy, what is your

15   position with respect to the Speedy Trial Act between now

16   and the 17th?

17             MS. LEVY:  Your Honor, our position remains the

18   same; that speedy trial should not be tolling.

19             The request that I am making is in part because of

20   discovery concerns we have.  And we do not feel that the

21   discovery, if there are discovery violations, should come at

22   the expense of my client's speedy trial rights.  So we would

23   ask the Court to not toll his speedy trial.

24             THE COURT:  Well, we still have the issue that the

25   clock is stopped, to a certain extent, given the

1     unavailability of one of the defendants.

2            Ms. Ravindra, what is your position with respect

3     to now and the 17th?

4            MS. RAVINDRA:  Your Honor, we would ask for

5     exclusion of time under the Speedy Trial Act.

6            We have been providing discovery.  We have been in

7     discussions, as outlined in this hearing, about a possible

8     resolution.  We would like to continue to do both of those

9     things in the interim time between now and the 17th and, for

10    those reasons, we believe it would be appropriate to exclude

11    time under the Speedy Trial Act.

12           THE COURT:  All right.  Well, Mr. Martinian, what

13    is your position with respect to your client?

14           MR. MARTINIAN:  We don't have a problem.

15           THE COURT:  All right.  Now, Ms. Levy, I

16    understand that you have mentioned speedy trial repeatedly

17    with respect to your client, and I have been jealously

18    guarding the month of August, despite the fact that four

19    other defendants have tried to set trials in this courtroom

20    in the past week, which is an usual circumstance for our

21    court.  I still am trying to keep that open if people want

22    to go to trial in this case, but I don't see at this point

23    that the clock is actually ticking.

24           What is your point of view about that?

25           MS. LEVY:  Your Honor, our position is that it is.

1    My client is in custody; we have resolved the motion to

2    suppress.

3            Our concern is a discovery issue regarding in part

4    that motion to suppress; and we are asking for a status in

5    two weeks, but that should not delay my client's speedy

6    trial rights.

7            THE COURT:  What I am saying is -- I believe that

8    other circumstances are affecting the calculation of the

9    Speedy Trial Act time at this moment which no one's

10   mentioned and no one seems to be addressing.

11           The government appears to be diligently making

12   efforts to apprehend the third codefendant.  So in his

13   absence at the moment, I don't -- I believe the clock is not

14   ticking.

15           Ms. Ravindra, what is your point of view about that?

16           MS. RAVINDRA:  Your Honor, I cannot say at this

17   moment what the specific provision of the Speedy Trial Act

18   is with respect to that argument, and I am looking now.  So

19   I would just -- I would just rest on the arguments I have

20   made previously with regard to Speedy Trial Act.

21           THE COURT:  All right.  In the event -- in the

22   event the clock is ticking, which I am not sure it is, I

23   will not exclude the time between now and March 17th because

24   this material was requested a considerable period of time

25   ago in advance of a hearing.  So I will not exclude the time

1    between now and the 17th given that it is the government's

2    delay that caused it and not everything else that we have

3    been talking about all along, the need for discovery, the

4    need for plea discussions, et cetera.

5            So whether I would continue to take that approach

6    after the 17th, I am not deciding.  But given these

7    particular circumstances for this two-week period it will

8    not be excluded.  But if people have other motions to file

9    or issues to raise with respect to the Speedy Trial Act and

10   what is going on under our current circumstances, it's

11   incumbent upon them to raise them.

12           All right.  Is there anything else given the fact

13   that you want to think about all of this stuff before

14   raising anything else with me that I need to take up right

15   now, Ms. Levy?

16           MS. LEVY:  No.  Thank you, Your Honor.

17           THE COURT:  All right.  Anything further that I

18   need to take up on behalf of Mr. Badalian?

19           MR. MARTINIAN:  Your Honor, my question would be:

20   Would my client be required to attend on the 17th, and

21   whether my associate can appear on my behalf that day?

22           THE COURT:  I don't see why either one of you are

23   required to attend, but I certainly would permit you to

24   attend since he is a codefendant in this case.  So if he

25   would like to waive his appearance for that date, that is

1    fine; and if you would like an associate to cover for you on

2    that date, that's fine with me as well.

3              MR. MARTINIAN:  Thank you, Your Honor.

4              THE COURT:  All right.  Anything further, right

5    now, Ms. Ravindra, on behalf of the government?

6              MS. RAVINDRA:  With respect to Mr. Badalian's

7    case, Your Honor, would the Court be excluding time under

8    the Speedy Trial Act given that they did not oppose?

9              THE COURT:  Yes.  He had no objection, and he

10   wasn't even really asking for another status conference that

11   soon anyway.  With respect to him, though, I will exclude it

12   between now and the 17th and, at that point, we'll figure

13   out what the next date is that we're counting down towards.

14   It may just be the motions date.

15              Your associate should at least be prepared, at

16   that time, to tell me whether we're just going to extend it

17   until the date your motions are due or whether you want a

18   status conference in between.  That would be helpful,

19   Mr. Martinian, okay?

20              MR. MARTINIAN:  Thank you, Your Honor.

21              THE COURT:  All right.  I will see everybody or

22   some subset of you in two weeks.  Thanks very much.

23              MR. MARTINIAN:  Thank you.

24              MS. RAVINDRA:  Thank you, Your Honor.

25              (Whereupon, the proceeding concludes, 2:31 p.m.)

## **CERTIFICATE**


I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.


Dated this 10th day of October, 2023.

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter