UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) ) |
| v. | ) Case No. 1:21-cr-246-ABJ ) ) |
| EDWARD BADALIAN, et al., | ) ) ) |
| Defendants. | ) ) |

**EDWARD BADALIAN'S MOTION FOR RELEASE PENDING APPEAL**

Edward Badalian, by counsel, respectfully moves the Court for release pending appeal, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1).

**Background**

After a bench trial, Badalian, 28, was found guilty of conspiracy to obstruct an official proceeding (18 U.S.C. §§ 371 & 1512(c)(2)), obstruction of an official proceeding (§ 1512(c)(2)), and entry into a restricted building or grounds (§ 1752(a)(1)).

The Court sentenced Badalian to 51 months' incarceration. The Guidelines calculation was driven by the defendant's convictions related to § 1512(c)(2). See U.S.S.G. §2J1.2.

On January 6, Badalian attended the Stop the Steal rally. Gov't Sentencing Mem., ECF No. 216, p. 9. He then walked to the Capitol. He then climbed stairs to the Upper West Terrace during the riot. He then ascended scaffolding. He then climbed through a broken window. Badalian saw rioters committing crimes like property destruction. After four minutes inside, he left the building "only when forced to by law enforcement." *Id.*, p. 17. Before and after January 6, Badalian made deprecating references to the "traitors" in Congress. *Id.*, p. 18. Badalian came to D.C. with co-defendant Daniel Rodriguez, who committed appalling crimes that day and was

1

sentenced accordingly.

Without the convictions related to § 1512(c)(2), Badalian's total offense level would have been 6.[1] U.S.S.G. §2B2.3(b)(1); Gov't Sentencing Mem., ECF No. 216, p. 23. That yields a Guidelines range of 0-6 months' incarceration. U.S.S.G. Ch. 5.

Badalian noticed his appeal on 9/27/2023. ECF No. 221. He surrendered to the Bureau of Prisons on or around September 26, 2023.

On June 28, the Supreme Court in a 6-3 decision held the following: "[S]ubsection (c)(2) [of Section 1512] was designed by Congress to capture other forms of evidence and other means of impairing its integrity or availability beyond those Congress specified in (c)(1)." *Fischer v. United States*, 603 U.S. __ (2024). Thus, subsection (c)(2) criminalizes impairment of all the categories of evidence not referenced in (c)(1), "such as witness testimony or intangible information." *Id.* It does not criminalize all acts that obstruct an official proceeding, including those with no relationship to evidence.

**Argument**

I.     **Standard for release pending appeal**

A court "shall order the release" of an individual pending appeal if it finds:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
  (i)    reversal,
  (ii)   an order for a new trial,
  (iii)  a sentence that does not include a term of imprisonment, or
  (iv)   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[1] This assumes Badalian's § 1752(a) conviction rested on sufficient evidence. As explained *infra*, there is a substantial question as to whether that is so.

2

18 U.S.C. § 3143(b)(1); *see also United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1987). "[I]n in the circumstance described in subparagraph (B)(iv) . . . the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." § 3143(b)(1).

**II.     Badalian's release pending appeal is appropriate under § 3143(b)(1)**

    **A.     Badalian poses no flight or safety risk**

Badalian was not detained pretrial. Indeed, the government did not seek detention and Badalian was released on a personal recognizance bond. That was in the same year in which the riot occurred. Badalian has no criminal history. He has strong ties to his community and family. Sentencing Mem., ECF No. 214, pp. 16-18. There is no factual basis on which to conclude that Badalian presents a danger to the community or flight risk now that was not present when he was released in the months following the riot. Accordingly, Badalian has satisfied § 3143(b)(1)(A).

    **B.     Resolution of substantial questions in Badalian's favor would likely result in a reduced imprisonment sentence that would expire before the appeal concludes**

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *Perholtz*, 836 F.2d at 555 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). This standard does not require the Court to find that Badalian's appeal establishes a likelihood of reversal. *See Bayko*, 774 F.2d at 522-23. Rather, the Court must "evaluate the difficulty of the question" on appeal, and grant release pending appeal if it determines that the question is a close one or one that "'very well could be'" decided in the defendant's favor. *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)).

Here, even before the Supreme Court's *Fischer* decision, this Court had determined that a number of Capitol riot defendants convicted under § 1512(c)(2) had satisfied the substantial question standard for release pending appeal. *E.g.*, *United States* v. *Adams*, 21-cr-354-APM, ECF No. 85; *United States v. Sheppard*, 21-cr-302-JDB, ECF No. 142; *United States v. Weyer*, 22-cr-40-JEB, ECF No. 71.

A fortiori, then, Badalian's appeal satisfies § 3143(b) after vacatur of the D.C. Circuit's decision in *Fischer*. No evidence at trial established that Badalian intended to or did impair the integrity or availability of evidence used in an official proceeding. "Evidence" is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." Black's Law Dictionary 576 (7th ed. 1999). On January 6, the Congress was not weighing evidence, though the legislature does weigh evidence when exercising its power of inquiry on other occasions. In any case, the government never presented to the grand jury the claim that Badalian impaired evidence, as indicated by the government's argument pre-*Fischer* that Badalian's crime lay in the fact that he obstructed the official proceeding "directly" (i.e., through his presence). U.S. Const. amend. V. Even if the Court were to deem (for example) electoral certificates "evidence," (1) this would constitute tangible "object" evidence which would fall within subsection (c)(1), with which Badalian was not charged or convicted, *Fischer*, No. 23-5572, 2024 U.S. LEXIS 2880, at *17; and (2) even if Badalian had been charged under subsection (c)(1) for this theory, no trial evidence established that he intended and attempted to impair the integrity or availability of electoral certificates on January 6.

Of course, even if the Court were to identify some potential counterarguments to these points, bail under section 3143(b) does not require a finding that Badalian's § 1512(c)(2)

convictions will likely be reversed. Badalian must only establish that the question is close or could well be decided in his favor. *Shoffner*, 791 F.2d at 589. Given that even under the best interpretation of *Fischer* for the government Badalian would still have been indicted under the wrong subsection of 1512, it is hard to see how he has not easily satisfied § 3143(b).

Given that Badalian will have served nearly a year in prison by the time this motion is resolved, it is not necessary to address his § 1752(a) conviction for which the maximum term of imprisonment is one year. But if it does, the Court should note that Badalian's appeal presents a substantial question there too.

The crime is knowingly entering into or remaining in a restricted building or grounds without lawful authority. § 1752(a)(1). The Court held that a defendant acts "knowingly" "if he realizes what he is doing and is aware of the nature of his conduct and doesn't act through ignorance, mistake, or accident." 4/4/2024 Tr., p. 43. Because the evidence showed that Badalian could see "the snow fence [which] had already been trampled [and] the signs saying the area was closed," it satisfied the "knowingly" element. *Id.* The Court also cited the facts that Badalian climbed through a broken Capitol window and went in the building, which a reasonable person would know he shouldn't do. *Id.*, p. 44.

However, a number of judges in this district have held that "knowingly" modifies every element of the offense and thus requires the defendant's knowledge of either some U.S. Secret Service protectee's presence in the restricted area or the presence of a protected person whether or not the defendant understands they belong in a protected class. *E.g.*, *United States v. David Elizalde*, 23-cr-170-CJN; *United States v. Samsel*, 21-cr-537-JMC; *United States v. Groseclose*, 21-cr-311-CRC; *United States v. Hostetter*, 21-cr-392-RCL. The issue is set to be decided by the Circuit in *United States v. Griffin*, 22-3042 (D.C. Cir.).

5

In finding Badalian guilty of a § 1752(a) offense, the Court did not appear to rely on evidence showing that the defendant knew of the Vice President's presence in the Capitol Building when Badalian entered the restricted area. 4/4/2024 Tr., pp. 43-44. Badalian is unaware of any. As indicated above, to determine that § 3143(b) is satisfied the Court does not have to find it likely that Badalian's § 1752(a) conviction will be vacated on this basis, only that the question "could well be" decided in his favor. *Shoffner*, 791 F.2d at 589. It is hard to see how that standard is not met when several judges in this district have decided the question in Badalian's favor.

Badalian's appeal is being held in abeyance pending the return of the mandate in *Fischer*. Thus, the Circuit has not even set a briefing schedule. A long backlog of January 6 cases is occupying the Circuit's docket. In addition, because the *Fischer* Court remanded a question for resolution by the Circuit, it could be some time before Badalian's appeal commences. The Circuit may then take over 6 months to resolve his appeal.

Taken together, then, Badalian has established that he will likely receive "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." § 3143(b)(1)(B)(iv). Indeed, he has established substantial questions that may result in vacatur of all convictions. § 3143(b)(1)(B)(i). Of course, in such a scenario, where there is a risk that the defendant is serving months of prison time for no sustainable conviction, any error in the release determination could have grave consequences.

Accordingly, Badalian moves the Court for release pending appeal. He is grateful for the Court's consideration of his motion.

Dated: July 2, 2024              Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010 Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Edward Badalian*

## Certificate of Service

I hereby certify that on the 2d day of July, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*